# UNITED STATES MUTUAL ACCIDENT ASSOCIATION
## v. BARRY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF WISCONSIN.

No. 240.   Argued April 9, 1889. — Decided May 13, 1889.

A certificate or policy issued by a Mutual Accident Association stated that it
    accepted B. as a member in division AA of the association; "the princi-
    pal sum represented by the payment of two dollars by each member in
    division AA," not exceeding $5000, to be paid to the wife of B. in 60 days
    after proof of his death, from sustaining " bodily injuries effected through
    external, violent and accidental means."   B. and two other persons jumped
    from a platform four or five feet high, to the ground, they jumping
    safely and he jumping last.  He soon appeared ill, and vomited, and
    could retain nothing on his stomach, and passed nothing but decomposed
    blood and mucus and died nine days afterwards.   In a suit by the widow
    to recover the $5000, the complaint averred that the jar from the jump
    produced a stricture of the duodenum, from the effects of which death
    ensued.   At the time of the death the association could have levied a
    two dollar assessment on 4803 members in division AA;  Held,
    (1) It was not error in the court to refuse to direct the jury to find a
            special verdict, as provided by the statute of the State;
    (2) The issue raised by the complaint as to the particular cause of death
            was fairly presented to the jury.
    (3) The jury were at liberty to find that the injury resulted from an
            accident;
    (4) The policy did not contract to make an assessment, nor make the
            payment of any sum contingent on an assessment or on its col-
            lection; and the association took the risk of those who should
            not pay.

THIS was an action at law brought in the County Court of
Milwaukee County, in the State of Wisconsin, by Theresa A.
Barry, a citizen of Wisconsin, against the United States Mutual
Accident Association, a New York corporation, to recover
$5000, with interest thereon at seven per cent per annum,
from July 15th, 1883, on a policy of insurance issued by the
defendant on June 23d, 1882.  The case, after answer, was
removed by the defendant into the Circuit Court of the United

States for the Eastern District of Wisconsin. The material parts of the policy are set forth in the margin.[1]

The complaint, after setting forth the terms of the policy and averring that it was delivered by the defendant to John S. Barry, alleged, "that, on or about the 20th day of June, 1883, and while said policy was in full force and effect, at the town or village of Iron Mountain, in the State of Michigan, and while the said John S. Barry was attending to the duties of his profession, to wit, that of a physician, and wholly without his fault, it became necessary for him to step or jump from

---

[1] No. 794.          Division AA.          $5000.

The United States Mutual Accident Association of the City of New York.

This certificate witnesseth, That The United States Mutual Accident Association, in consideration of the warranties and agreements made to them in the application for membership and of the sum of four dollars, do hereby accept John S. Barry, by occupation, profession, or employment a physician residing in Vulcan, State of Michigan, as a member in division AA of said association, subject to all the requirements and entitled to all the benefits thereof. The principal sum represented by the payment of two dollars by each member in division AA of the association, as provided in the by-laws (which sum, however is not to exceed five thousand dollars), to be paid to Theresa A. Barry (his wife), if surviving (in the event of the prior death of said beneficiaries, or any of them, said sum shall be paid as provided in the by-laws), within sixty days after sufficient proof that said member, at any time within the continuance of membership, shall have sustained bodily injuries effected through external, violent and accidental means, within the intent and meaning of the by-laws of said association and the conditions hereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof. . . . Provided always, That this certificate is issued and accepted subject to all the provisions, conditions, limitations, and exceptions herein contained or referred to. . . . Provided always, That benefits under this certificate shall not extend to hernia, nor to any bodily injury of which there shall be no external and visible sign, nor to any bodily injury happening directly or indirectly in consequence of disease, nor to any death or disability which may have been caused wholly or in part by bodily infirmities or disease existing prior or subsequent to the date of the certificate, . . . nor to any case except where the injury is the proximate or sole cause of the disability or death. . . . And these benefits shall not be held to extend . . . to any case of death . . . unless the claimant under this certificate shall establish by direct and positive proof that the said death or personal injury was caused by external violence and accidental means, and was not the result of design either on the part of the member or of any other person.

a platform or walk to the ground beneath, about four feet downwards, and, in doing so, and in alighting upon said ground, he unexpectedly received an accidental jar and sudden wrenching of his body, caused by said jump or step downward and by coming in contact with the said ground beneath, as aforesaid, all of which was unexpected on his part and wholly without his fault or negligence; that the said jarring of his person and wrenching of his body, caused as aforesaid, was the immediate cause of, and directly produced, a stricture of the duodenum, from the effects of which the said John S. Barry continued to grow worse until, on the 29th day of June, 1883, he, on account of the same, died."

Issue was joined, and the case was tried by a jury, whose verdict was, that they found the issue in favor of the plaintiff, and assessed the damages to her at the sum of $5779.70; and a judgment was entered for her for that amount, and $189.35 costs, being a total of $5969.05. To review this judgment the defendant has brought a writ of error.

At the trial the plaintiff offered in evidence the policy or certificate, to which offer the defendant objected, for the reason that the complaint did not state facts sufficient to constitute a cause of action. The objection was overruled and the defendant excepted. The defendant objected also that the complaint alleged no assessment, and the court received the evidence subject to the objection. The plaintiff then proved, without objection, by the secretary of the defendant, that on the 23d of June, 1882, there were 804 members in division AA in the association, and on the same day in 1883, 4803 members, and on the same day in 1884, 5626 members; that, during June and July, 1883, the defendant, in case of a death in division AA, could have levied a two-dollar assessment on at least 4803 members, that number being then insured in that division; that the only members who were exempt from the two-dollar death assessment were those who became members subsequent to the death for which the assessment was made; that, if the defendant had desired to pay the loss occasioned by the death of Barry the amount to be paid would have been $5000; that the assessment levied next prior to June 29th,

1883, was levied June 1st, 1883; that if, at the time a death was reported, and a claim was proved, there were sufficient funds to the credit of division AA, the loss was paid from those funds, without making a specific assessment; that, if there were not sufficient funds at that time, an assessment was made; and that, on June 29th, 1883, the defendant had on hand, belonging to class AA, $2060.15. The witness then produced the by-laws of the defendant for 1882–1883, the material parts of which are set forth in the margin.[1]

In the proofs of death furnished to the defendant was the following, in the evidence of the attending physician : " 12th. What was the precise nature of the injury and its extent? Inflammation of the duodenum, from jarring (jump)."

The plaintiff's husband was a physician 30 years of age at the time of his death. He was, at the time of the injury, strong and robust, weighing from 160 to 175 pounds, about six feet high, and in good health. With two other physicians, Dr. Crowell and Dr. Hirschmann, he visited a patient, on June 20th, 1883, who lived in a house behind a drug store. On coming out of the house they were on a platform which was between four and five feet from the ground, and if they got off from the platform it was but a short distance to the back part of the drug store, where they desired to go. The other two

---

[1] Art. 1, sec. 3. The object of this association is to collect and accumulate a fund to be held and used for the mutual benefit and protection of its members, (or their beneficiaries,) who shall have sustained while members of the association bodily injuries, whether fatal or disabling, effected through external, violent and accidental means.

Art. 7, sec. 1. Upon sufficient proof that a member of one of the divisions of this association shall have sustained bodily injuries effected through external, violent and accidental means within the intent and meaning of these by-laws and the conditions named in the certificate of membership, and such injuries alone shall have occasioned death within ninety days from the happening thereof, the board of directors shall immediately order an assessment of two dollars upon each person who was a member of the division to which deceased belonged at the time of such death, and shall pay the amount so collected, according to the following schedule of classification . . . to the person or persons whose name shall, at the time of the death of such member, be found recorded as his last designated beneficiaries, if surviving. To members of division AA not exceeding $5000.

jumped from the platform first, and alighted all right. Dr. Hirschmann testifies: " Just after we had jumped Dr. Barry jumped, and he came down so heavy that it attracted our attention, and we both turned around, and we both remarked that it was a heavy jump, and I asked him, ' Doctor, are you hurt?' and he said, 'No; not much.' I have an indistinct recollection of his leaning against the platform when he jumped, but not sufficiently to state positively. If I were to jump I would jump and strike on my toes, and if I had any distance to jump would allow my knees to give. The way Dr. Barry came down it sounded to us as if he came down solid on his heels, so much so that we both turned around and remarked, ' Doctor, you came down heavily.' And I asked him, ' Are you hurt?' and he said, ' No ; not much.' I heard the noise. It was a singular jump and sounded like an inert body. We then went with him to the drug store." Hirschmann drove home with him. He appeared ill on the way, and when he arrived home was distressed in his stomach, and vomited, and from that time on retained nothing on his stomach, and passed nothing but decomposed blood and mucus, and died nine days afterwards. There was much conflicting testimony as to the cause of death, and as to whether it resulted from duodenitis or a stricture of the duodenum, as alleged in the complaint, and from an injury caused by the jump. The issues presented to the jury sufficiently appear from the charge of the court.

At the close of the evidence on both sides, all of which is set forth in the bill of exceptions, the defendant moved the court to direct a verdict for it, on the ground that there was no evidence to sustain a cause of action. The motion was denied and the defendant excepted.

The plaintiff then, by leave of the court, amended her complaint by alleging that, at the time of Dr. Barry's death, and from that time, and for the balance of the year 1883, and including the time, as provided for in the policy, in which the said insurance was to be paid to the plaintiff herein, there were insured by it in class AA, the same class in which said Doctor Barry was at the time insured, 4803 members or per-

sons upon whom the defendant could have levied an assessment, under its by-laws and rules, of the two dollars per head, making an amount exceeding the plaintiff's claim of $5000. This amendment was objected to, but the defendant took no exception.

The defendant then demanded that the court submit a special verdict in the case, as provided by the rules of practice in the State of Wisconsin, and, as a question upon such special verdict, requested the court to submit the following question: "Whether the death of Dr. Barry was caused by duodenitis?" The demand was refused and the defendant excepted. The defendant then asked the court to submit, in connection with the general verdict, the special question as to whether the assured died of duodenitis. The request was refused and the defendant excepted.

The defendant then requested the court to charge the jury as follows: "It appears from the evidence in this case that by the policy in suit the defendant company accepted John S. Barry as a member of class AA, and in effect agreed to levy an assessment of two dollars upon each member of said class and to pay the same to the plaintiff if said John S. Barry should die of bodily injuries, effected through external, violent and accidental means, but in no event to pay more than $5000. Before the plaintiff can recover in this case she must show that the defendant, when it received the proof of death on or about July 15th, 1883, either had cash on hand belonging to class AA, or levied an assessment upon the members, and by that means the defendant received money which belonged to class AA. By the evidence in suit it appears that there were over 4000 members belonging to class AA during the months of June and July, 1883, who were subject to assessment of two dollars per man, and that, on June 1st, 1883, an assessment was made upon members belonging to class AA, and that on June 29th, 1883, the defendant had on hand $2060.15 belonging to class AA, and that an assessment was then pending and in process of collection. This evidence does not show any cash on hand belonging to class AA on July 15th or at any later date, nor is there any other evidence in the case

which would show that fact or that any assessment was levied. Therefore the plaintiff cannot recover in this action, and you are instructed to return a verdict for the defendant." The court refused to give this instruction and the defendant excepted.

The defendant then separately requested the court to charge the jury to find for the defendant because no accident within the true intent and meaning of the policy occurred to Dr. Barry; and that he did not die from duodenitis; and that they must find for the defendant if he, in jumping, alighted squarely on his feet, or if they found that the jump did not result in the obstruction or occlusion of the duodenum; and that there was no evidence of any wrenching, twisting, or straining of the body in the jumping; and. that, considering the character of the injury alleged in the case and the difficulty attending its proper investigation, great weight should be given by the jury to the opinion of scientific witnesses accustomed to investigate the causes and effects of injury to the alimentary canal, and a distinction should be made in favor of the opinion of those accustomed to use the most perfect instruments and processes, and who are acquainted with the most recent discoveries in science and the most perfect methods of treatment and investigation.

The court refused to give these instructions severally, and the defendant excepted to each refusal.

The defendant also separately requested the court to charge the jury that their verdict must be for the defendant if they found that the alleged injury was not sustained by Dr. Barry, or that the injury was not effected through violent means, or through accidental means, or through external means, or that death occurred directly or indirectly in consequence of disease or bodily infirmity, or partly or wholly from disease, or not from duodenitis; and that they were not at liberty to speculate as to what occurred in the jump, but must be governed by the evidence of witnesses on the trial.

The court refused to give these instructions severally, except as contained in its general charge, and the defendant excepted to each refusal. This makes it necessary to set forth the parts of the charge to the jury which are involved in the several

requests. They are as follows, and the defendant excepted at the time separately to each part which is contained in brackets:

"By the terms of the certificate it was provided that, to entitle the beneficiary to the sum of five thousand dollars, the death should be occasioned by bodily injuries alone, effected through external, violent and accidental means; also, that the benefits of the insurance should not extend to any injury of which there was no external and visible sign, nor to any injury happening, directly or indirectly, in consequence of disease, nor to any death or disability caused wholly or in part by bodily infirmities or disease existing prior or subsequent to the date of the certificate, nor to any case except where the injury was the proximate or sole cause of the disability or death.

"The issue between the parties may be briefly stated: It is claimed by the plaintiff that on the occasion mentioned by Dr. Hirschmann, when the deceased was at Iron Mountain, he sustained an injury by jumping from a platform to the ground; that this injury was effected by such means as are mentioned in the certificate; that the deceased, at the time of the alleged accident, was in sound physical condition and in robust health; and that the alleged injury was the proximate and sole cause of death.

"The defendant, on the other hand, denies that the deceased sustained any injury that was effected through accidental means, and also contends, that, if any injury was sustained, it was one of which there was no external or visible sign, within the meaning of the policy, and that the supposed injury was not the cause of the death of the deceased, but that he died from natural causes. The case, therefore, resolves itself into three points of inquiry:

"First. Did Dr. Barry sustain internal injury by his jump from the platform on the occasion testified to by Dr. Hirschmann?

"Second. If he did sustain injury as alleged, was it effected through external, violent and accidental means, within the sense and meaning of this certificate, and was it an injury of which there was an external and visible sign?

"Third. If he was injured as claimed, was that injury the proximate cause of his death?

"To entitle the plaintiff to a verdict, each and all of these questions must be answered by you in the affirmative, and if, under the testimony, either one of them must be negatively answered, then your verdict must be for the defendant.

["The first question (viz., Was the deceased, Dr. Barry, injured by jumping from the platform?) is so entirely a question of fact, to be determined upon the testimony, that the court must submit it without discussion to your determination. In passing upon the question, you will consider all the circumstances of the occurrence as laid before you in the testimony; the apparent previous physical condition of Dr. Barry; the subsequent occurrences and circumstances tending to show the change in his condition; the relation in time which the first developments of any trouble bore to the time when he jumped from the platform; the nature of his last sickness; and the symptoms disclosed in its progress and termination.]

"Further, you will inquire what evidence, if any, did the post-mortem examination and any and all subsequent examinations of the parts alleged to have been the seat of the supposed injury furnish of an actual physical injury; [what connection, if any, does there or does there not appear to be between the act of jumping from the platform and the subsequent events and circumstances which culminated in death, including the result, as you shall find it to be, of the post-mortem investigations. The question is before you in the light of all proven facts, for determination. The court cannot indicate any opinion upon it, without invading your exclusive province; and by your ascertainment of the fact the parties must be bound.]

["There is presented in the case a train of circumstances. Do they or not, so to speak, form a chain connecting the ultimate result with such a previous cause as is alleged? Was the act of jumping from the platform adequate or inadequate to produce an internal injury? Thus you may properly pursue the inquiry, guided by and keeping within the limits of the testimony.]

" If you find that injury was sustained, then the next question is, Was it effected through external, violent and accidental means ?  This is a pivotal point in the case, and therefore vitally important.  The means must have been external, violent and accidental.  Did an accident occur in the means through which the alleged bodily injury was effected ?

[" The jumping off the platform was the means by which the injury, if any was sustained, was caused.]

[" Now, was there anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground ?]

[" The term ' accidental ' is here used in its ordinary, popular sense, and in that sense it means ' happening by chance ; unexpectedly taking place ; not according to the usual course of things ; ' or not as expected.]

[" In other words, if a result is such as follows from ordinary means voluntarily employed in a not unusual or unexpected way, then, I suppose, it cannot be called a result effected by accidental means.]

[" But if in the act which precedes the injury something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted from the accident or through accidental means.]

[" We understand, from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice, and not from any perilous necessity.  He encountered no obstacle in jumping, and he alighted on the ground in an erect posture.  So far we proceed without difficulty ; but you must go further and inquire, and here is the precise point on which the question turns : Was there or not any unexpected or unforeseen or involuntary movement of the body, from the time Dr. Barry left the platform until he reached the ground, or in the act of alighting ?  Did he or not alight on the ground just as he intended to do ?  Did he accomplish just what he intended to, in the way he intended to ?  Did he or not unexpectedly lose or relax his self-control, in his downward movement ?  Did his feet strike the ground as he intended or

expected, or did they not? Did he or not miscalculate the distance, and was there or not any involuntary turning of the body, in the downward movement, or in the act of alighting on the ground? These are points directly pertinent to the question in hand.]

"And I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected or involuntary occurred, changing or affecting the downward movement of his body as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated or would naturally anticipate, then any resulting injury was not effected through any accidental means. [But if, in jumping or alighting on the ground, there occurred, from any cause, any unforeseen or involuntary movement, turn, or strain of the body, which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he expected to make, or as it would be natural to expect under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means.]

"Of course it is to be presumed that he expected to reach the ground safely and without injury. [Now, to simplify the question and apply to its consideration a common-sense rule, did anything, by chance or not as expected, happen, in the act of jumping or striking the ground, which caused an accident? This, I think, is the test by which you should be governed, in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means.]

"You have the testimony in relation to the occurrence which it is claimed by the plaintiff produced in Dr. Barry a mortal injury. Taking it all into consideration and applying to the facts the instruction of the court, you will determine whether, if any injury was sustained, it was effected through external, violent, and accidental means. The defendant claims

that, if Dr. Barry did sustain injury, it was one of which there was no external and visible sign, within the meaning of the certificate of insurance, and therefore, that the plaintiff is not entitled to recover. [Counsel are understood to contend that no recovery could be had under a certificate of insurance in the form and terms of this one, if the injury was wholly internal. In that view the court cannot concur. It is true there must be an external and visible sign of the injury, but it does not necessarily follow from that that the injury must be external. That is not the meaning or construction of the certificate. Such an interpretation of the contract would, in the opinion of the court, sacrifice substance to shadow and convert the contract itself into a snare, an instrument for the destruction of valuable rights. Visible signs of injury, within the meaning of this certificate, are not to be confined to broken limbs or bruises on the surface of the body. There may be other external indications or evidence which are visible signs of internal injury. Complaint of pain is not a visible sign, because pain you cannot see. Complaint of internal soreness is not such a sign, for that you cannot see, but if the internal injury produces, for example, a pale and sickly look in the face, if it causes vomiting or retching, or bloody or unnatural discharges from the bowels, if, in short, it sends forth to the observation of the eye, in the struggle of nature, any signs of the injury, then those are external and visible signs, provided they are the direct results of the injury ; and, with this understanding of the meaning of the certificate of insurance, and upon the evidence, you will say whether, if Dr. Barry was injured as claimed, there were or were not external and visible signs of the injury ; and the determination of this point will involve the consideration of the question whether what are claimed here to have been external and visible signs were, in fact, produced by — were the result of — the injury, if any was sustained.]

" The next question is, if Dr. Barry was injured as claimed, was the injury the sole or proximate cause of his death ? Interpreting and enforcing the certificate of insurance according to its letter and spirit, it must be held that, if any other cause

than the alleged injury produced death, there can be no recovery, so that, to entitle the plaintiff to recover, you must be satisfied that the alleged injury was the proximate cause of death. Whether a cause is proximate or remote does not depend alone upon the closeness in the order of time in which certain things occur. An efficient, adequate cause being found, it must be deemed the true cause, unless some other cause not incidental to it, but independent of it, is shown to have intervened between it and the result. If, for example, the deceased sustained injury to an internal organ, and that necessarily produced inflammation, and that produced a disordered condition of the injured part, whereby other organs of the body could not perform their natural and usual functions, and in consequence the injured person died, the death could be properly attributed to the original injury. In other words, if these results followed the injury as its necessary consequence, and would not have taken place had it not been for the injury, then I think the injury could be said to be the proximate or sole cause of death; but if an independent disease or disorder supervened upon the injury, if there was an injury — I mean a disease or derangement of the parts not necessarily produced by the injury — or if the alleged injury merely brought into activity a then existing, but dormant, disorder or disease, and the death of the deceased resulted wholly or in part from such disease, then it could not be said that the injury was the sole or proximate cause of death.

"It is claimed by the plaintiff that the supposed jar or shock said to have been produced by jumping from the platform caused some displacement in the duodenum; that it became occluded, to use the expression that has been used by witnesses; that there was constriction and occlusion of that intestine, which was accompanied with consequent inflammation — in short, that the deceased had duodenitis, as the direct result of the alleged original injury, and in consequence died. This contention is urged upon all the circumstances of the case, and upon the testimony offered by the plaintiff tending to show the symptoms which accompanied the last sickness, the diagnosis of the case made by attending physicians, and the

alleged developments of the autopsy. It is contended in behalf of the defendant, that there was no constriction, occlusion, or inflammation of the duodenum; that the deceased did not have duodenitis; and that no physical injury is shown to have resulted from jumping from the platform. This claim is based upon the contention that the various symptoms manifested in the last sickness of the deceased were consistent with natural causes, with some undiscovered organic trouble not occasioned by violence or sudden injury; that the conclusions of the physicians who made the post-mortem examination were erroneous; and that the microscopic examination of the parts in New York demonstrated such alleged error. Concerning the microscopic test made in New York by Dr. Carpenter, the plaintiff contends that it is not reliable and should not be accepted, for reasons urged in argument and which I need not repeat.

"Now, between these conflicting claims weighing and giving due consideration to all the testimony, you must judge. If the deceased died of some disease or disorder not necessarily resulting from the original injury, if there was an injury, then the defendant is not liable under this certificate of insurance; but if the deceased received an internal injury which in direct course produced duodenitis, and thereby caused his death, then the injury was the proximate cause of death.

"In considering this case you ought not to adopt theories without proof, nor to substitute bare possibility for positive evidence of facts testified to by credible witnesses. Mere possibilities, conjectures, or theories should not be allowed to take the place of evidence; where the weight of credible testimony proves the existence of a fact, it should be accepted as a fact in the case. Where, if at all, proof is wanting and the deficiency remains throughout the case, the allegation of fact should be deemed not established.

"There has been considerable testimony given by physicians, what we call expert testimony, and in the consideration of that testimony it is your province to determine which of these medical witnesses is right in his statement, opinion, or judgment. It is purely a question of fact for you, which of these

physicians was most competent to form a judgment as to the cause of Dr. Barry's death. Who has had the best opportunities for forming a judgment as to the cause of death?

"All this is to be taken into consideration by you in weighing and deliberating upon this evidence. . .

"I am asked to instruct you that, before the plaintiff can recover, she must show that when the defendant received the proofs of death, on or about July 15, 1883, it either had cash on hand belonging to class AA, or that it levied an assessment upon the members, and by that means received money which belonged to class AA. This construction of the certificate is upon the theory that, to entitle the plaintiff to recover, it is essential to show either that it had money on hand with which to meet this loss, or that it has made an assessment from which the loss can be paid.

"This instruction I must decline to give you, for the reason that it appears from the evidence that there were more than a sufficient number of members in class AA to pay the five thousand dollars on this certificate, if an assessment were to be made; and I regard it the duty of the association to make the assessment when the death loss is proved, and where the case is one upon which the association is liable to pay the loss.

"Now, to sum up the case, if you find from the evidence that the deceased, on the 20th day of June, 1883, sustained a bodily injury, and that such injury was effected through external, violent and accidental means, and was one of which there was an external and visible sign, and that the injury was the proximate or sole cause of death, then the plaintiff should have a verdict in her favor.

"If, on the contrary, you find either that the injury was not sustained, or that, if it was sustained, it was not effected through external, violent and accidental means, or was an injury of which there was no external and visible sign, or that it was not the proximate or sole cause of death, then your verdict should be for the defendant.

"If you find the plaintiff entitled to recover you will render a verdict in her favor for the sum of five thousand dollars, with interest at 7 per cent, computed from the 15th of Sep-

tember, 1883, to the present time, adding the interest to the principal, so that your verdict will show the gross sum."

·After the charge had been given, a juryman inquired: "Is there any evidence showing that the association did make an assessment after receiving proof of Dr. Barry's death?" The court replied: ["There is some proof on that subject. You need not take that into consideration at all, for I have instructed you that if you should find the facts as I have stated them to you the plaintiff is entitled to recover. You need not take into consideration the matter of assessment."] The defendant excepted to the part in brackets.

*Mr. B. K. Miller, Jr.*, for plaintiff in error.

I. The court erred in not directing a special verdict.

The Revised Statutes of Wisconsin, 1887, § 2858, provides: "The court in its discretion may, and when either party at or before the close of the testimony and before any argument to the jury is made or waived shall so request, the court shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of questions in writing, relating to only material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. The court may also direct the jury, if they render a general verdict, to find in writing upon any particular question of fact, to be stated as aforesaid. In every action for the recovery of money only or specific real property, the jury may in their discretion when not otherwise directed by the court render a general or a special verdict."

If requested in proper time it is obligatory upon the judge to submit a special verdict; "the court *shall* direct the jury to find a special verdict." *Schatz* v. *Pfeil*, 56 Wisconsin, 429; *Fenelon* v. *Butts*, 53 Wisconsin, 344. This is the general rule in States where a similar rule is in force. This statute is binding on the Federal Courts. Rev. Stat. § 914; *Indianapolis, &c. Railroad* v. *Horst*, 93 U. S. 291, 301.

There are two forms of procedure in Wisconsin: one by an ordinary special verdict, in which the jury decides all the

facts, and upon which a judgment is rendered as in *Easton* v. *Hodges*, 106 U. S. 408; the second method is by submitting a general verdict and adding certain special questions.

In the case at bar a special verdict was demanded, and when that was refused a special finding was requested.

The error assigned refers only to the refusal of the court to submit a special verdict. The refusal to submit a special finding in addition to the general verdict was clearly not error in view of the decision in *Indianapolis Railroad Co. v. Horst*, 93 U. S. 299. It would seem, that a particular form of rendering a verdict was certainly a "form or mode of proceeding" within the true intent and meaning of the statute. *Chateaugay Ore & Iron Co., Petitioner*, 128 U. S. 544.

II. The trial court erred in not restricting the case to the issues made up by the pleadings.

The issue by the pleadings was "accidental death from duodenitis." The issue submitted by the court was accidental death from anything.

The complaint alleges that deceased jumped off a low platform and "unexpectedly received an accidental jar and sudden wrenching of his body caused by said jump." "That the said jarring of his person and wrenching of his body caused as aforesaid was the immediate cause of and directly produced a stricture of the duodenum from the effects of which . . . [he] died." The answer denies this. So the issue certainly was whether the insured died of duodenitis caused by an accident.

It is a general rule that the allegata and probata must agree. If a party plead with too great particularity he must make his proof accordingly.

The plaintiff alleged an accidental injury to duodenum. The defendant denied such an accident. The proof was directed almost entirely to this question. The court left it generally to the jury to say whether there was any accidental injury of any kind; thus submitting to the jury questions not raised by the pleadings or covered by the evidence.

III. There was no evidence to support the verdict because no accident was shown.

The policy was to insure Dr. Barry against death by accident, provided he "shall have sustained bodily injuries effected through external, violent and accidental means . . . and such injuries alone shall have occasioned death." "Provided, always, that benefits under this certificate shall not extend to hernia nor to any bodily injury of which there shall be no visible sign nor to any bodily injury happening directly or indirectly in consequence of disease nor to any death or disability which may have been caused wholly or in part by bodily infirmities or disease . . . nor to any case except where the injury is the proximate or sole cause of the disability or death . . . nor to any case of death or personal injury unless the claimant, under this certificate, shall establish by direct and positive proof that the said death or personal injury was caused by external, violent and accidental means."

The court instructed the jury as follows: "Now, was there anything accidental, unforeseen, involuntary, unexpected in the act of jumping, from the time the deceased left the platform until he alighted on the ground?"

Again, "Was there or not any unexpected or unforeseen or involuntary movement of the body from the time Dr. Barry left the platform until he reached the ground or in the act of alighting? Did he or not alight on the ground just as he intended to? Did he accomplish just what he intended to, in the way he intended to? Did he or not unexpectedly lose or relax his self-control in his downward movement? Did his feet strike the ground as he intended or expected, or did they not? Did he not miscalculate the distance, and was there or not any involuntary turning of the body in the downward movement or in the act of alighting on the ground? These are points directly pertinent to the question in hand."

Again. "But if, in jumping or alighting on the ground, there occurred from any cause, any unforeseen or involuntary movement, turn or strain of the body which brought about the alleged injury, or if there occurred any unforeseen circumstances which interfered with or changed such a downward movement as he expcted to make or as it would be natural to expect under such circumstances, and as caused him to alight

on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means."

There is no evidence that any one of these things happened. So far as the evidence goes, Dr. Barry voluntarily jumped off the platform, alighted squarely on his feet without falling, in fact did exactly what he intended to do and in the way intended.

An "accident" is defined to be "an event from an unknown cause," or "an unusual and unexpected event from a known cause." The death in this case was not caused by such an accident. *Southard* v. *Railway &c. Assurance Co.*, 34 Connecticut, 574; *McCarthy* v. *Travellers' Insurance Co.*, 8 Bissell, 362.

If there was an accident it does not follow from the evidence that he died therefrom.

After the jump they all went to a drug-store and met some gentlemen there. The deceased drove all the way home. He was ill that night and continued ill till the date of his death, and although he may have died of an obstruction of the bowels or even from duodenitis, there is absolutely no evidence that his death was caused by the jump. It is a clear case of *post hoc propter hoc*.

IV. No recovery at law was recoverable in this action, certainly not for more than nominal damages.

The policy of insurance provided that "the principal sum represented by the payment of $2 by each member in division AA . . . as provided in the by-laws," should be paid to Mrs. Barry.

The by-laws provide that "the board of directors shall . . . order an assessment of $2 upon each person . . . and pay the amount so collected." No evidence of an assessment was offered or given.

The contract between the parties is not that the defendant will absolutely pay $5000 or any other sum, but that it will levy an assessment and pay over the proceeds thereof. Plaintiff's remedy was clearly in equity for a specific performance and even if an action at law will lie it would be for breach of

covenant; the damages would be merely nominal. *Curtis* v. *Mutual Benefit Life Ins. Co.*, 48 Connecticut, 98; *Eggleston* v. *Centennial Mutual Life Association*, 18 Fed. Rep. 14; *Smith* v. *Covenant Benefit Association*, 24 Fed. Rep. 685; *Covenant Benefit Association* v. *Sears*, 114 Illinois, 108; *In re La Solidarité Mutual Benefit Association*, 68 California, 392; *Rainsbarger* v. *Union Mutual Aid Association*, 72 Iowa, 191; *Bailey* v. *Mutual Benefit Association*, 71 Iowa, 689; *Newman* v. *Covenant Mutual Benefit Association*, 72 Iowa, 242; *Tobin* v. *Western Mutual Aid Society*, 72 Iowa, 261.

*Mr. William F. Vilas* for defendant in error.

*Mr. George McWhoeter* and *Mr. C. B. Bice* filed a brief for defendant in error.

Mr. Justice Blatchford, after stating the case as above reported, delivered the opinion of the court.

(1) When the trial took place, in December, 1885, the following provision of the state statute was in force in Wisconsin, (Rev. Stat. of Wisconsin, 1878, 760, § 2858, title 25, c. 128:) "The court, in its discretion, may, and when either party, at or before the close of the testimony and before any argument to the jury is made or waived, shall so request, the court shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of questions, in writing, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. The court may also direct the jury, if they render a general verdict, to find in writing upon any particular questions of fact to be stated as aforesaid. In every action for the recovery of money only, or specific real property, the jury may, in their discretion, when not otherwise directed by the court, render a general or a special verdict."

It is contended, for the defendant, that the court erred in refusing its demand to submit a special verdict in the case, as provided by the rules of practice in the State. It is, however,

conceded, in the brief of its counsel, that the refusal to submit a special question in connection with the general verdict, was not error, in view of the ruling of this court in *Indianapolis Railroad Co.* v. *Horst*, 93 U. S. 291, 299. In that case this court adhered to its views expressed in *Nudd* v. *Burrows*, 91 U. S. 426, 442, that the personal conduct and administration of the judge in the discharge of his separate functions was neither practice, pleading, nor a form or mode of proceeding, within the meaning of § 5 of the act of June 1, 1872, 17 Stat. 197, now § 914 of the Revised Statutes, and further said that the statute was not intended to fetter the judge in the personal discharge of his accustomed duties, or to trench upon the common law powers with which in that respect he is clothed. This principle has been uniformly applied since by this court; and we are of opinion that it covers the demand made in this case that the court should submit a special verdict, as provided by the rules of practice in the State of Wisconsin, and should submit the particular question mentioned in that connection.

(2) It is also urged as error that the court did not restrict the case to the issue made by the pleadings; that that issue was, that the assured died from " a stricture of the duodenum," produced by the accident; and that the issue submitted by the court was accidental death from anything. The court very properly refused to instruct the jury that the assured did not die from duodenitis; and its response to the request to instruct them that if they found he did not die from duodenitis, their verdict must be for the defendant, was, that it refused to give that instruction " except as contained in the general charge." It is contended, however, for the defendant, that, in the general charge, the jury were charged, in effect, that, if the assured sustained internal injury of any kind by his jump, and died therefrom, the plaintiff could recover. But we do not so understand the charge. In a part of it, before set forth, and not excepted to by the defendant, the court distinctly laid before the jury the issue as to the constriction or occlusion of the duodenum, and the contentions of the two parties in regard thereto, and told the jury that they must judge between those conflicting claims, weighing and giving due consideration to

all the testimony, and that if the deceased received an internal injury which in direct course produced duodenitis, and thereby caused his death, then the injury was the proximate cause of death.

(3) It is further urged that there was no evidence to support the verdict because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term "accidental" was used in the policy in its ordinary, popular sense, as meaning "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;" that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means. The jury were further told, no exception being taken, that, in considering the case, they ought not to adopt theories without proof, or substitute bare possibility for positive evidence of facts testified to by credible witnesses; that where the weight of credible testimony proved the existence of a fact, it should be accepted as a fact in the case; but that where, if at all, proof was wanting, and the deficiency remained throughout the case, the allegation of fact should not be deemed established.

In *Martin* v. *Travellers' Ins. Co.*, 1 Foster & Fin. 505, the policy was against any bodily injury resulting from any accident or violence, "provided that the injury should be occa-

sioned by any external or material cause operating on the person of the insured." In the course of his business he lifted a heavy burden and injured his spine. It was objected that he did not sustain bodily injury by reason of an accident. The plaintiff recovered.

In *North American Ins. Co.* v. *Burroughs*, 69 Penn. St. 43, the policy was against death "in consequence of accident," and was to be operative only in case the death was caused solely by an "accidental injury." It was held that an accidental strain, resulting in death, was an accidental injury within the meaning of the policy, and that it included death from any unexpected event happening by chance, and not occurring according to the usual course of things.

The case of *Southard* v. *Railway Passengers' Assurance Co.*, 34 Connecticut, 574, is relied on by the defendant. That case, though pending in a state court in Connecticut, was decided by an arbitrator, who was then the learned district judge of the United States for the District of Connecticut. But if there is anything in that decision inconsistent with the present one, we must dissent from its views.

(4) It is contended that no recovery at law could be had on this policy, or, at most, only one for nominal damages, on the ground that the contract of the defendant was not to pay any sum absolutely, but only to levy an assessment and pay over the proceeds; and that the remedy of the plaintiff was solely in equity, for a specific performance of the contract.

The policy says: "The principal sum represented by the payment of two dollars by each member in division AA of the association as provided in the by-laws," not to exceed $5000, "to be paid" to the wife. Although the by-laws state that the object of the association "is to collect and accumulate a fund" for the purpose named, and that, on the requisite proof of bodily injury to, and the death of, a member of a division, the board of directors shall immediately order an assessment of two dollars upon each person who was a member of the division to which the deceased belonged at the time of his death, and pay the amount so collected, according to the prescribed schedule of classification, to the proper beneficiary, the policy

does not contract to make an assessment, nor does it make the payment of any sum contingent on an assessment, or on the collection of an assessment. It agrees to pay a principal sum represented by the payment of two dollars for each member in division AA, within sixty days after proof of death. The association always knows the number of members which is to be multiplied by two. It has sixty days in which to make the assessment and collect what it can, before making any payment, but it takes the risk as to those who do not pay in time or at all. The liability to assessment is all that concerns the beneficiary, not the making or collection of an assessment; and the liability to assessment only measures the amount to be paid under the policy.

In view of the amendment made to the complaint at the trial which was not excepted to, and of the testimony of the secretary of the defendant, the charge of the court on the subject of an assessment was proper, and so was the verdict.

In the cases cited by the defendant either the policy was different from the present one, in providing only for levying an assessment and paying the amount collected, or there was no proof of the assessable number of members.

We see no error in anything excepted to by the defendant, and the judgment is

*Affirmed.*