Hart, J.,
 

 dissenting. I agree that to recover on an accident insurance policy providing coverage for accidents caused “solely through external, violent and accidental means,” there must be proven not only an accidental result but that such result was caused by accidental means.
 

 This dissent from the majority opinion occurs at the point of interpretation of the term “accidental cause” or
 
 ‘ ‘
 
 accidental means, ’ ’ both terms being used by the courts interchangeably as having the same rheaning. The confusion of thought on this subject arises, in my humble opinion, in the failure to differentiate or to recognize the distinction between the origin of injury flowing from the voluntary act of the party injured, accompanied with full knowledge and apprehension of the probable consequences of his act, and the origin of injury flowing from the voluntary act of the party injured unaccompanied by apprehension on his part of unforeseen and unexpected consequences resulting from such act. In the latter case, the event or circumstance which he failed to apprehend and which was responsible for the mishap furnishes the basis of accident by accidental means.
 
 *557
 
 To illustrate, in the case of
 
 Industrial Commission
 
 v.
 
 Roth,
 
 98 Ohio St., 34, 120 N. E., 172, 6 A. L. R., 1463, a workman in cold weather undertook to heat paint in a small building which had no ventilation except the doors and windows, which were closed. The paint, when heated, gave off poisonous fumes which were inhaled by the workman. If he had understood the deadly nature of the fumes he was breathing, he could have escaped all danger by opening the doors and windows in the room in which the paint was being heated. His misapprehension as to the presence and deadly character of the fumes which he breathed constituted the accidental means and brought about ,his death.
 

 In the case of
 
 U. S. Mutual Accident Assn.
 
 v.
 
 Barry,
 
 131 U. S., 100, 33 L. Ed., 60, 9 S. Ct., 755, where a physician voluntarily jumped from a platform to the street, a distance of four feet, causing a stricture of the duodenum from which he died, the court held that death resulted through accidental means. Justice Blatchford, speaking for the court, said:
 

 “If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.”
 

 In the case of
 
 Lewis, Exrx.,
 
 v.
 
 Ocean Accident & Guarantee Corp., Ltd.,
 
 224 N. Y., 18, 120 N. E., 56, 7 A. L. R., 1129, where death ensued from inflammation of the brain caused by infection due to the voluntary puncturing of a pimple on the lip of the decedent, the court, in construing the policy providing coverage for accidents caused by accidental means, held that death was caiised by accidental means. The court, speaking through Judge Cardozo, then a member of the court, said:
 

 “We think there is testimony from which a jury
 
 *558
 
 might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident. We have held that infection resulting from the use of a hypodermic needle is caused by ‘accidental means’
 
 (Bailey
 
 v.
 
 Interstate Casualty Co.,
 
 8 App. Div., 127; 158 N. Y., 723;
 
 Marchi
 
 v.
 
 Aetna Life Ins. Co.,
 
 140 App. Div., 901; 205 N. Y., 606). The same thing must be true of infection caused by the puncturing of a pimple. Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. ’ ’
 

 In the case of
 
 Mansbacher
 
 v.
 
 Prudential Ins. Co.,
 
 273 N. Y., 140, 7 N. E. (2d), 18, 111 A. L. R., 618, where the death of the insured was occasioned by his taking an overdose of a drug prescribed by his physician, the amount of the drug taken being intended, but the disastrous effect not being intended, the court, in construing a policy similar to the policy involved in the case at bar, held that the assured’s death was caused by accidental means. Chief Judge Crane, speaking for the court in that case, said:
 

 “The plaintiff’s case comes within the coverage of this policy. Her husband intended to take veronal but he never intended to take a lethal dose, nor did he intend to take enough to do him any harm; he desired to get relief from pain, not relief from life. He took too much veronal; it was a mistake, a misstep, an unexpected effect from the use of his prescribed medicine. It was an accident, and must have been an accident unless it was intentional. In other words, if the insured did not intend to kill himself he intended to take enough veronal, as he had done theretofore, to relieve the pain of earache. By mischance he took too much. His death was accidental and, as we use these words in
 
 *559
 
 common parlance, we would speak of it as an accidental death.”
 

 Incidentally, in his opinion in the above case, Chief Judge Crane approves the holding of the Supreme Court of New York, Appellate Division, in
 
 Hoenig
 
 v.
 
 New York Life Ins. Co.,
 
 249 App. Div., 618, 282 N. Y. Supp., 443, affirming
 
 Hoenig
 
 v.
 
 New York Life Ins. Co.,
 
 156 Misc., 697, 282 N. Y. Supp., 443, a case almost identical with the one at bar, wherein it is held that a death which resulted from peritonitis following* a traumatic rupture of the intestine caused by the administration of an enema by the deceased to herself was caused by accident within the double indemnity clause of a life policy providing coverage if “the death of the insured * * * resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause.”
 

 The majority opinion in this case assumes that there was “no unexpected, unforeseen, or unusual happening” preceding the rupture of the sigmoid and, therefore, the accidental rupture was not caused by accidental means. While it is admitted on all sides that the taking of the enema in the manner described was voluntary on the part of the decedent, no one claims that in so doing he intended the result, the taking of his own life. The only alternative is that the amount of pressure of the water entering the bowel was greater than intended or anticipated by him, or that the bowel was weak or abnormal in some r-espect unlmown to him. This was something unusual and unexpected, and certainly not within his apprehension. The sudden, unexpected, undue pressure released in the bowel was the accidental means.
 

 The post-mortem disclosed the presence of a quart of food and fecal matter mixed with blood in the abdominal cavity outside the bowel, with a tear in the bowel itself an inch and a half long. In the light of these circumstances, it seems absurd to claim that no
 
 *560
 
 accident happened when by some mischance there was suddenly forced into decedent’s bowel pressure of such amount and force as to burst the bowel with such tragic and disastrous consequences. As above indicated, the introduction of such unexpected pressure in the bowel was certainly not intended or anticipated by him and must have been accidental in origin. This furnishes ample accidental means to cause the accidental result. Any other conclusion would force us to the position that only accidents caused by other persons can be construed to have accidental origin.
 

 Mitchell, in this case, intended to use the water from the faucets in lieu of the water bottle, but he evidently misjudged the force or pressure in the water system, or his ability to control it. His misjudgment in that respect was fortuitous, an accident furnishing the accidental means which in turn caused the bursting of his sigmoid. His lack of experience or judgment introduces an accidental element into what he evidently thought was a safe and commonplace operation, but which unexpectedly put in motion a force which punctured the bowel. ,
 

 If decedent had undertaken to take the enema in the ordinary way by the pressure of water from a water bag, and because of the elevation of the water bag causing greater pressure or because of some unknown weakness of the bowel it had burst under pressure, as shown by
 
 Hoenig
 
 v.
 
 New York Life Ins. Co., supra,
 
 such a result would be classed and was classed by the court as an accident produced or caused by accidental means. If, on the other hand, the potential pressure of the water from the water faucets in a bathtub was not appreciated, or there was misjudgment as to the ability to control the force of the water — whatever the unforeseen or unexpected element in the operation — as in the case at bar, this would be an accidental cause or accidental means producing the ultimate accidental result. In both cases just mentioned, indistinguishable
 
 *561
 
 as they are, if the subject “dies as the result of a ruptured sigmoid caused by administering to himself an enema in the manner intended, by voluntarily connecting the rubber tube to the [water bottle or] faucets in a bathtub, such death” would be “deemed effected by accidental means.”
 

 . Williams and Myers, JJ., concur in the foregoing dissenting opinion.