## BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES

v.

### Marie HUTSON.

No. 6209.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 5, 1959.

Rehearing Denied March 4, 1959.

608

Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellant.

Dies, Anderson & Dies, Lufkin, for appellee.

McNEILL, Justice.

This is a companion case to Provident Life and Accident Insurance Co. v. Hutson, Tex.Civ.App., 305 S.W.2d 837, which was decided by this court in an opinion written by our late Chief Justice R. L. Murray. The facts are substantially the same in both cases but the policies and parties involved are not the same.

Appellee, as beneficiary, sued appellant on an accident and sickness policy which it had issued to her husband, Albert Preston Hutson, insured, on Feb. 2, 1954. Her petition alleged that while said policy was in full force the insured's death was brought about by accidental cause, and, therefore, under the terms of the policy defendant is liable for the amount payable in said policy for death.

The policy provides coverage "for loss resulting directly and independently of all other causes, from bodily injury * * *

which is effected through accidental cause * * *."

Mr. Hutson was an employee of the Southern Pacific Railroad at Lufkin. He developed trouble with his eyesight and was sent by a local doctor to the Southern Pacific hospital in Houston in June, 1954. He was found by the doctors in the hospital to be suffering from a sixth nerve paralysis and they thought probably his trouble stemmed from an aneurysm. He was later released from the hospital and returned to work. However, his condition appeared to have gotten worse and he again entered the hospital on April 18, 1955, where he was further examined by Dr. Edmund Fountain, one of two neurological surgeons at the hospital. As result of several tests the doctor suspected that he had a tumor of the brain in the right section of the cerebrum. Thereafter, on April 29th at about 7:30 a. m., the doctor performed the final test, a pneumoencephalogram, on the deceased.

The deceased had theretofore executed what the parties called a "surgical consent". A pneumoencephalogram consists of making a spinal puncture in the lower lumbar region of the spine while the patient is in a sitting position and is asleep under the influence of pentothal; a small amount of spinal fluid is removed and replaced with oxygen or air, which arises and enables the ventricles of the brain to be X-rayed. The results of this procedure on the deceased failed to show anything positive. From this, Dr. Fountain testified, the diagnosis was made that the deceased was suffering from a brain stem tumor. Shortly after this test was finished the deceased began to grow worse, developing high fever, but was kept alive by artificial respiration until he died on May 4, 1955. An autopsy was performed, disclosing that the deceased had a brain stem tumor which was inoperable and that this tumor had hemorrhaged as a result of the pneumoencephalogram and that this was the immediate cause of death. There was evidence that such tumors will often hemorrhage following a pneumoencephalogram.

Upon a trial to a jury a single issue was submitted, as follows: "Do you find from a preponderance of the evidence that the death of Albert P. Hutson, at the time and place it occurred resulted directly and independently of all other causes, from bodily injury effected through accidental cause?" The jury answered, "We do" and judgment was rendered in behalf of the appellee.

Appellant, by its first five points, urges that the death of the deceased was not caused solely and alone by accidental cause within the meaning of the terms of the said policy and in Point No. 6 urges that there was insufficient evidence to support the finding of the jury, and by Point 7 that the verdict of the jury is so against the overwhelming weight and preponderance of the evidence as to be wholly wrong and unjust.

■ There seems to be a clear distinction recognized in the authorities between an "accidental death" and death caused by "accidental means". The meaning of the first is death itself is the accident, unforeseen and unexpected, occurring without plan, while the second requires that the thing that brings about or produces death shall itself be accidental, that is, unforeseen or unexpected.

■ It is contended by appellant that nothing unforseen or unexpected happened or anything unusual intervened in connection with the giving of the pneumoencephalogram test, and that the rupture or hemorrhage of the tumor was a logical result and, of course, this hemorrhage caused the death of the deceased; that the death was "accidental" but not caused by "accidental means" (or accidental cause); nothing was done or happened out of the ordinary but merely the location of the tumor was not where the doctor thought it to be. Appellee contends in her counter points that while the doctor's test was done in an ordinary and usual manner, yet it produced a result (rupture of the tumor) which was not intended and was unforeseen; that the rupture of the tumor therefore was in itself accidental, and

the resulting death was produced by "accidental means". Dr. Fountain testified that he did not expect the results to be what they were, that he expected to find a right cerebrum lesion and that the tests were given with this in mind, and that he did not expect the condition of the deceased to get worse immediately as it did. He testified his findings were all consistent with a brain stem tumor but also that his findings were consistent with other things. He stated that the immediate cause of death was hemorrhage of the brain stem tumor; that it was located on the brain stem and was therefore inoperable; that the tumor was the cause of the hemorrhage and the death of the deceased.

He further testified that he would not have performed the pneumoencephalogram if he had known the tumor was on the brain stem since the death of the insured was probable if he did have a brain stem tumor; that this test involved a calculated risk that must be taken; that he certainly did not expect the insured to die at the time he gave him the pneumoencephalogram. The testimony of Dr. L. H. Denman, insured's family physician, supports that of Dr. Fountain.

This court, in the companion case, Provident Life & Accident Ins. Co. v. Hutson, supra, held in effect, in overruling the first seven points of the appellant in that case, that insured's death was produced solely by accidental cause. We think now that a similar ruling should be made. It is our view that Dr. Fountain's mistake or miscalculation in believing in and acting upon the assumption in giving the pneumoencephalogram test that the tumor or lesion was on the right cerebrum, when it actually was on the brain stem, constitutes the unforeseen or unexpected factor that entered into the circumstances bringing about the unexpected and unanticipated hemorrhage of the brain stem tumor thus producing death. The doctor's miscalculation of the location of the tumor is comparable to the miscalculation of the distance to the ground by Dr. Barry when he jumped off a platform to the

ground causing a constricture of his duodenum as described in United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60, and is comparable to the mistake of the doctor in giving a patient, violently allergic to them, sulfanilamide tablets which produced his death as described in Hanna v. Rio Grande Nat. Life Ins. Co., Tex.Civ.App., 181 S.W.2d 908 (writ refused). Bryant v. Continental Cas. Co., 107 Tex. 582, 182 S.W. 673, 676, L.R.A.1916E, 945, Ann.Cas.1918A, 517, the leading Texas case on the point, and Metropolitan Life Ins. Co. v. Funderburk, Tex.Civ.App., 81 S.W.2d 132 (er. dis.), by this court, in principle support our holding.

 That the deceased was not in healthy condition will not necessarily defeat recovery. International Traveler's Ass'n v. Dixon, Tex.Civ.App., 283 S.W. 681 (writ ref.). Whether disease directly contributed to the death of the deceased was for the jury. The special issue above quoted includes this factor. However, appellant affirmatively pleaded as a defense: "Defendant further says that Albert Preston Hutson, deceased, died as a result of natural causes, disease, or a sickness wholly disconnected with any accident." And under Robinson v. Aetna Ins. Co., Tex.Civ.App., 262 S.W. 118, affirmed Tex.Com.App., 276 S.W. 900, was entitled to submission of a proper issue thereon. It tendered the following as such issue: "Do you find from a preponderance of the evidence that the death of Albert Preston Hutson, deceased, was not the result of natural causes, diseases or a sickness wholly disconnected with any accident. Answer 'It was,' or 'It was not.'" This issue placed the burden of proof on appellee, evidently upon the basis of Rule 94, Texas Rules of Civil Procedure, and the holding in Travelers' Ins. Co. v. Harris, Tex.Com. App., 212 S.W. 933, and later cases, placing the burden on the beneficiary in an insurance policy to show that the loss does not come within the meaning of any of the exceptions set out in the insurance contract. We have carefully examined the policy involved and the exceptions set forth are:

"(1) suicide (or any attempt thereat) while sane or insane; * * * (3) the Association shall not be liable for death, injury incurred or disease contracted, to which a contributing cause was the Insured's commission of or attempt to commit a felony, or to which a contributing cause was the Insured's being engaged in an illegal occupation." The affirmative defense pleaded by appellant, therefore, was not within any of the "exceptions" in said policy, and the issue requested improperly placed the burden of proof upon appellee and the trial court properly refused it. Mitchell v. Mills, Tex.Civ. App., 264 S.W.2d 749. Under all the circumstances it was appellant's own defensive issue and the burden thereof was its own.

The judgment of the trial court should be and is affirmed.