Dye, J. (dissenting).
On this appeal we review a determination of the State Comptroller, made after a hearing before a *267 Deputy Comptroller, which denied a widow’s claim for death benefits based on the accidental death of her husband while in the performance of his duties as a Forest Ranger in the State Department of Conservation. The claim was disapproved because the hearing officer concluded that the decedent’s death was not due to accident and this, notwithstanding that he had found as a fact that the decedent’s activities had “ precipitated the attack of coronary occlusion resulting in his death ’ ’.
This decisional paradox is about to be resolved on the theory that the Legislature has endowed the Comptroller, acting through his deputy, with a unique type of juridical discretion whenever called upon to determine claims for benefits arising under the Retirement System and this, because the Legislature has said that a prior final determination by the Industrial Board “ shall not in any respect, be or constitute, a determination that an accidental disability retirement allowance or death benefit is payable pursuant to the provisions of this article by reason of the accidental disability or death of such member.” (Civil Service Law, former § 67, subd. 3.) While the Legislature thus excused the Comptroller from being bound by a prior determination of the Industrial Board attributable to the same accident, they did not thereby say that, in making a determination, he was no longer bound to follow accepted rules governing the making of decisions. On the contrary, when the Legislature gave the Comptroller “ exclusive authority to determine all applications for any form of retirement or benefit provided ” under the retirement statutes (Retirement and Social Security Law, § 74, subd. b), which includes a claim such as this, it was not a carte blanche permission to do as he pleased. To make sure such freedom would not be abused, the Legislature also specifically provided that the Comptroller was to make his determination “ on the basis of the evidence ” (Retirement and Social Security Law, § 61, subd. a). They thus embedded in the statute a rule of law which is fundamental to an orderly settlement of any controversy, whether tried in a court, by an administrator or other designated authority. In deciding as he did, the Deputy Comptroller has ignored this fundamental statutory precept to draw a conclusion of law contrary, not only to all the evidence on the issue, but contrary as well, to his own findings of fact.
*268 The uncontradicted testimony of the eyewitnesses to the happening of the event and the testimony of the medical witnesses, both by those in attendance and in the opinion of experts, all add up to the conclusion that the decedent met his death by accident in the performance of his duties. According to such proof — and the findings of fact based thereon—the decedent had a mild cardiac insufficiency in October, 1953 which passed over, but later on and between December 7 and 24, 1953 he was hospitalized and treated for ‘ ‘ anteroseptal myocardial infarction ”. He returned to his duties as a Forest Banger in March, 1954, at which time his activities were restricted “ to doing only supervisory work ”.
On the day in question, April 11, 1955, during the forenoon he responded to a number of permit fires and false alarms. In the afternoon he responded to a fire alarm in a hilly region near Dean Boad, Putnam County. The fire was in a steep, woody and very rough terrain. To reach the area of the fire, the decedent had to cross a brook and climb through boulders and thick underbrush to “ a steep hill approximately 400 feet high ”. The decedent fought the fire for approximately two hours, during which time he carried on his back an Indian tank with hose weighing about 40 pounds, a long rake weighing 8 or 9 pounds and a hook. The fire was a bad one, requiring the services of the decedent and about 20 to 25 volunteer firemen to extinguish. As was his custom, the decedent stayed behind to make certain that the fire would not break out anew. He asked one of the volunteers to stay with him, saying: “ I am not feeling so good.” At that moment he collapsed and died before aid could reach him. It was this extraordinary physical exertion that ‘ ‘ precipitated the attack of coronary occlusion resulting in his death ”, a fact which the Deputy Comptroller has found. It was not[1]‘ performed in the course of decedent’s usual customary work voluntarily undertaken ” as a majority are about to hold, but was in excess of and over, above and beyond the light duties prescribed for this decedent as a condition on which he returned to work following his disabling heart attack in 1954. As we have seen—and as the Deputy Comptroller has found—his activities were restricted “to doing only supervisory work”. “ On the basis of the evidence ” thus adduced and on the Comptroller’s own findings of fact based thereon, the only conclusion *269 of law reasonably to be drawn therefrom was accident. While it is true accident is nowhere precisely defined, it does not follow that it is a term without meaning. It is a word in common everyday usage and is generally understood to mean an event of an unfortunate character that takes place without one’s foresight or expectation, an undesigned sudden event, a mishap, a mischance, a calamity of catastrophy, a happening not in the usual course; fortuitously, unforeseen and without cause (Webster’s Standard Dictionary, Oxford, Funk & Wagnall’s). It is a term of general import to be tested as to meaning by common usage of speech and understanding (United States Mut. Acc. Assn. v. Barry, 131 U. S. 100; Bird v. St. Paul Fire & Mar. Ins. Co., 224 N. Y. 47; Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18) and, as we ourselves have said, “ is to be determined not by any legal definition, but by the common-sense viewpoint of the average man” (Matter of Masse v. Robinson Co., 301 N. Y. 34, 37). While that statement was made in a case arising under the Workmen’s Compensation Law, it was neither a radical nor different enunciation of applicable law nor did we intend to confine it to the facts of that case. We deemed it a good definition then and nothing has happened in the meantime calling for a change. Section 64 of the Retirement and Social Security Law in essence simply says that a prior Workmen’s Compensation Board determination “ shall not in any respect be, or constitute a determination ” of a claim arising under the Retirement System attributable to the same accident. The statute does not say and there is nothing in its wording suggesting that the Comptroller has inherent power to disregard sound legal concepts simply because such concepts may also be applied in a compensation case, which is not at all the same as saying that he is not bound by a determination made by the Workmen’s Compensation Board in the same case. The Comptroller may not ignore commonly accepted criteria and substitute a rule of his own. When he does so, he commits error as matter of law.
Here, the forest fire leading to the decedent’s untimely death was wholly unforeseen. It was sudden, unexpected and without foreseeable cause. It was catastrophic; as the hearing officer himself described it, “ nasty ” and “ mean ”; it was an emergency and required unusual physical effort to control. The decedent was restricted to light duty because of a pre-existing heart condition, which his employer well knew. In responding *270 to this sudden emergency, he so overtaxed his strength that he died, or, as the Deputy Comptroller himself expressed it, “ precipitated the attack of coronary occlusion resulting in his death Such an unforeseen, sudden and unusual event culminating in the tragic death of the principal actor was accident by any accepted criteria. Had the deceased been burned to death under the same or similar circumstances, there would be no room for reasonable men to differ. How can it be said that a coronary occlusion precipitated by this catastrophic event is any less an accident?
As has been said, the Deputy Comptroller, backed by all the testimony, both eyewitness and medical, has found causal relation to the death. In such posture, the question whether there was an accident within the statute became a question of law. The findings of the Comptroller made “ on the basis of the evidence ” require him to answer, as matter of law, that the member died “ as the natural and proximate result of an accident sustained in the performance of duty in the service upon which his membership was based ” (§ 61, subd. a). He was not free to say that, because the decedent had a pre-existing heart condition, extraordinary physical exertion in excess of his strength performed in an unforeseen sudden and unexpected emergency arising in the course of his duties resulting in death was not accident. To so determine was error as matter of law under both the statute and decisions. When the Legislature made provision for payment of accidental death benefits to a widow of a deceased employee, it contemplated that such claims would be dealt with in accordance with the evidence. It did not intend that the Comptroller or his deputy should cancel it out by making a determination contrary to the evidence and the facts as actually found. The Legislature intended that the Comptroller and his deputy—like any other trier of the fact — should make a decision on “ the basis of the evidence ” (§ 61, subd. a).
For these reasons, I vote to affirm the order appealed from, with costs.