THE CONTINENTAL CASUALTY COMPANY V. GRANT G.
JOHNSON.

No. 14,649.    (85 Pac. 545.)

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*Sunstroke.*   The word "sunstroke,"
when used in an insurance policy in describing one of the
risks covered, should not be interpreted as applying only to
an effect produced by the heat of the sun, unless the context
or other special considerations require it; the term unex-
plained denotes a condition produced by any heat, solar or
artificial.

2. —— *Disability Due to Artificial Heat.*   In an action upon
an accident-insurance policy containing a provision that loss
of time due to sunstroke should be deemed to be due to ex-
ternal, violent and purely accidental causes and should en-
title the insured to full benefits according to the terms of the
policy, where the plaintiff's claim is based upon a loss which
he alleges was due to sunstroke, he is not precluded from re-
covery by the fact that his disability was occasioned by ex-
posure to the heat of a furnace, not to that of the sun.

Error from Harvey district court; PETER J. GALLE,
judge. Opinion filed June 9, 1906. Affirmed.

*Bowman & Bowman,* for plaintiff in error; *Manton
Maverick,* of counsel.

*J. S. Henderson,* and *Branine & Branine,* for defend-
ant in error.

The opinion of the court was delivered by

MASON, J.:  Grant G. Johnson held a policy of in-
surance issued by the Continental Casualty Company,
the principal purpose of which was to provide in-
demnity to the amount of ten dollars a week against
loss occasioned by accidental injury, its phraseology be-
ing that usually employed in contracts of that char-
acter.  It also contained a provision as follows:

"The loss of  .  .  .  time, as above provided, due
solely to  .  .  .  sunstroke or freezing due solely to

.9—74 KAN.

necessary exposure while engaged in his occupation, shall be deemed to be due to external, violent and purely accidental causes and shall entitle the insured to full benefits according to the terms of this policy."

What is called a "health-insurance rider" was attached to and made a part of the policy, providing that for time lost by illness or disease the insured should be entitled to receive five dollars a week. Johnson was a flue-welder, and while engaged in that occupation was overcome by heat from the forge or furnace near which he worked and in consequence thereof became ill and suffered the loss of nearly a year's time. He brought an action upon his policy alleging that his loss was due to sunstroke, and recovered a judgment based upon that theory. The company prosecutes error, and rests its case upon one general contention, which if sound requires a reversal of the judgment, namely, that the word "sunstroke" as used in the policy referred only to an effect produced by the heat rays of the sun. If, however, the word was there employed in a sense that made it applicable to a condition resulting from artificial heat the judgment must stand, for there was abundant evidence that the plaintiff suffered from sunstroke if that term may be used to describe a disorder so occasioned.

The only definition of sunstroke given in Webster's International Dictionary is as follows:

"Any affection produced by the action of the sun on some part of the body; especially, a sudden prostration of the physical powers, with symptoms resembling those of apoplexy, occasioned by exposure to excessive heat, and often terminating fatally."

This language is not free from ambiguity, but seems to recognize two meanings of the word; in the one case as colloquially used in a popular and general sense, referring to any ill effects resulting from exposure to the direct rays of the sun, and in the other as accurately employed in a scientific and technical way to denote a specific ailment caused by excessive heat from

any source. The Standard Dictionary gives but one meaning, as follows: "A sudden cerebral disturbance, often with apoplectic symptoms, due to exposure to excessive heat, generally that of the sun." The definition of the Century Dictionary is not so explicit, but is probably open to the same construction. It is:

"Acute prostration from excessive heat of weather. Two forms may be distinguished—one of sudden collapse without pyrexia (heat exhaustion), the other with very marked pyrexia (thermic fever). The same effects may be produced by heat which is not of solar origin."

The Encyclopædia Britannica thus defines sunstroke, giving heat-stroke as a synonym: "A term applied to the effects produced upon the central nervous system, and through it upon other organs of the body, by exposure to the sun or to overheated air." In the course of the article introduced by the words just quoted it is said:

"While attacks of sunstroke are frequently precipitated by exposure, especially during fatigue, to the direct rays of the sun, in a large number of instances they come on under other circumstances. Cases are of not unfrequent occurrence among soldiers in hot climates where there is over-crowding or bad ventilation in their barracks, and sometimes several will be attacked in the course of a single night. The same remark applies to similar conditions existing on shipboard. Further, persons whose occupation exposes them to excessive heat, such as stokers, laundry workers, &c., are apt to suffer, particularly in hot seasons."

The Encyclopedia Americana article on the subject begins:

"Sunstroke, prostration due to exposure to intense external heat. Such exposure may be to the direct or indirect rays of a tropical sun or to the excessive heat of an engine-room. In either case heat and physical exertion combine to bring about the results. A high degree of humidity of the atmosphere is one of the most important features, since this hinders free evaporation from the body."

The New International Encyclopædia treats the word as a synonym of heat-stroke, which it defines thus: "The effect produced upon the body by exposure to intense heat, whether from the sun, from furnaces, or from the atmosphere." The Universal Cyclopædia furnishes this definition: "Fever due to excessive heat, but most commonly to exposure to the direct heat of the sun; indirect solar heat or artificial heat may have the same effect."

A number of medical dictionaries apply the word to a specific fever caused by heat, regardless of its origin, as shown by the following definitions: "Heat-stroke, especially that due to exposure to the sun's rays." (Billings, Nat. Med. Dic.) "A popular term for insolation or heat-stroke." (Gould, New Med. Dic.) "A condition resulting from exposure to the heat of the sun or to heat from other sources." (J. K. Fowler, Dic. of Prac. Med.) "Heat-stroke, especially from direct sun-rays." (Keating, New Pron. Dic. of Med., 2d ed.) "Certain pathological conditions resulting from exposure to solar or artificial heat." (Quain, Dic. of Med., 11th ed.)

The following-named works fail to recognize the application of the term to any case not resulting from solar heat, but whatever significance might otherwise attach to this fact is diminished if not destroyed by the further fact that they treat heat-stroke in the same way, the first five giving it as a mere synonym of sunstroke, and the others ignoring it altogether: Appletons' Medical Dictionary, Lippincott's Medical Dictionary, Dunglison's Medical Dictionary, Foster's Encyclopædic Medical Dictionary, the Encyclopædic Dictionary, Thomas's Medical Dictionary, the Imperial Dictionary, Worcester's Dictionary, Stormonth's Dictionary, Zell's Encyclopedia and Dictionary.

In the work of H. C. Wood, jr., on Sunstroke it is said:

"My own experience is that the only absolutely necessary, and the ever-present, immediate cause [of what

the author calls sunstroke] is heat, solar or artificial. It was formerly believed that exposure of the head to the direct rays of the sun was requisite, but this is now well known not to be true. One of my own cases originated in a sugar refinery. Dr. Longmore tells us that out of sixteen cases seen by him in one epidemic, thirteen originated in barracks or hospital." (Page 9.)

And in Herold's Manual of Legal Medicine:

"This affection [sunstroke] is produced by exposure to great solar heat, over-exertion, and an insufficient supply of water. The term is also applicable to those cases occurring as a result of exposure to other sources of extreme heat." (Page 421.)

And in volume 1 of Peterson & Haines's Text-book of Legal Medicine and Toxicology:

"Exclusive of the effects of burns and scalds, heat may produce lethal effects by what is commonly known as sunstroke, heat-stroke, or thermic fever. This condition, presenting several different phases, usually occurs from exposure to the direct rays of the sun, but may be induced by exposure to any excessive external heat if of sufficiently long duration." (Page 173.)

In volume 3 of Wharton & Stille's Medical Jurisprudence, fifth edition (§ 312), cases arising from exposure to the intense heat of the sun are spoken of as "true" sunstroke, and in Draper's Legal Medicine (p. 461) it is said to be correct to speak of such cases as sunstroke, but in each instance the context seems to indicate that what is intended is merely a suggestion that the word as ordinarily employed is in a sense a misnomer.

It seems clear from these authorities not merely that it is permissible to apply the word "sunstroke" to a condition produced by artificial heat, but that it accords with the best usage to do so; that such condition is comprehended within the ordinary meaning of the word wherever it is used with care and precision, whether in technical scientific treatises or in works designed for the general reader. Where the word is used carelessly or ignorantly it may well be supposed that

reference is had to any temporary discomfort resulting from exposure to the direct action of the sun. So in *Insurance Co. v. Trefz*, 104 U. S. 197, 26 L. Ed. 708, it was held that the statement of a witness that he had had an attack of sunstroke was not necessarily to be taken as an admission that his ailment was in fact a real case of sunstroke, properly so called. But in the drawing of an instrument of the character and importance of an insurance policy the presumption should be that language is selected to express with entire accuracy and correctness the agreements of the contracting parties. And in the present case the word "sunstroke" may be deemed to describe, or at least to be inclusive of, the condition properly called by that name, whether occasioned by solar or artificial heat, unless some special reason exists for giving it a different meaning.

There may be an apparent incongruity in calling that sunstroke which has no relation to any effect produced by the sun, but this is only to say that the word is not happily formed to suggest the idea it is employed to express. Etymology is not always a safe guide to the meaning of a term. It is no more imperative that sunstroke shall always mean a disorder caused by the sun than that lunacy shall denote only an aberration due to the influence of the moon. It is true, as urged by counsel for the plaintiff in error, that heat-stroke is a more logically constructed phrase. Words, however, are not to be interpreted by any theory of how they ought to be used, but in accordance with the actual use to which they are put by those whose custom establishes a standard. The history of the word "sunstroke" seems to be that it was coined to describe any suddenly perceived ill effects of sun heat; as observation disclosed that a definite morbid condition ordinarily accompanied or followed such an incident the word was applied to that condition in the belief that it was peculiar to cases having that origin; as advancing medical science revealed that such condition was a distinct disease, and might and often did result from

artificial as well as from solar heat, the doctors, instead of at once inventing a new and more appropriate name, broadened the application of the old one, and their example was naturally and properly followed by others until the usage became general. Later, as a visible mark of the advanced learning on the subject, a more suitable term was originated to describe the disorder—"heat-stroke," the growing employment of which may in time restore sunstroke to its primitive meaning. That this result has not yet been accomplished is evidenced by the fact that the new word is given in but two of the general dictionaries—the Standard and the Encyclopædic—and there merely as the equivalent for the old one. We are not directly concerned with the past or future meaning of the word, but with its present significance, and that, as already indicated, we think is comprehensive enough to cover the defendant in error's case.

The provision of the policy is that sunstroke "shall be deemed to be due to external, violent and purely accidental causes" and shall entitle the insured to indemnity at the full rate. It is argued, not without plausibility, that this language points to a conception of sunstroke as something of sudden and unexpected occurrence, more or less in the nature of an accident, and that this conception is only appropriate to an attack brought on by exposure to the sun's rays. But prostration resulting from heat emanating from a furnance may be as swift in its development and as startling in its effects as though it were occasioned by hot and humid weather. In each case there would be present some of the features of an accidental injury, but neither would justify a recovery upon an ordinary accident policy.

In the only reported cases bearing on the subject (*Dozier v. Fidelity & Casualty Co. of New York*, 46 Fed. 446, 13 L. R. A. 114, and *Sinclair v. Passengers' Ins. Co.*, 3 El. & El. [Eng.] 478, 107 E. C. L. [Eng.] 476, 7 Jurist, part 1 N. S. [Eng.] 367), in disposing of

.the contention that the holder of an ordinary policy insuring him against accidental injuries is entitled to recover for disability due to sunstroke, it was held that sunstroke is not an accident but a disease. These cases are frequently referred to by the medical and legal writers and seem to be regarded as .definitely settling the proposition to which they are directed. The discussion in the case first named tends to support the view that sunstroke may be caused by artificial heat, and the decision is cited as having that effect in Peterson & Haines's Text-book of Legal Medicine and Toxicology, at page 491. It might not be unfair to assume that the policy here involved was drafted in the light of these decisions. Whether so or not, we see nothing in its language to impair the effect of .the presumption that the word "sunstroke" was used in its strictly correct sense. If the company wished to limit its liability under this clause to disability occasioned by natural heat it could easily have so framed the policy as to make this clear, and it should have done so.

The health rider is of course to be deemed a part of the contract. By its terms it covered sunstroke as well ·as other diseases. But in the body of the policy that disease is singled out and expressly classified as an accident for the purposes of fixing the extent of indemnity afforded against that particular disorder. The liability of the company must be determined by the specific rather than by the general provisions.

Johnson had previously suffered a somewhat similar affliction while holding a like policy from the company, and made a claim and received payment upon the basis of its being ordinary sickness, covered by the rider. Evidence was offered by the company to show the full facts with reference to this matter but was ruled out, and of this complaint is made. We do not think the evidence rejected had any tendency to show an interpretation of the contract by the parties or that the court committed error in this connection.

The jury found that overwork was a contributing

cause of Johnson's ailment, and the plaintiff in error argues that this should prevent a recovery, because it shows that his condition was not due solely to heat. Severe exertion, according to the authorities already cited, renders one more subject to sunstroke. The fact that the jury found in the present instance that there was over-exertion does not affect the liability of the company. To hold otherwise would be to make the mere negligence of the insured a defense. The established rule is to the contrary. (1 Cyc. 282.)

The judgment is affirmed.

All the Justices concurring.