Mrs. Amelia Bryant et al. v. Continental Casualty Company.

No. 2427. Decided February 14, 1916.

1.—Accident Insurance—Sunstroke.

Under a policy insuring against death from "bodily injury effected directly and independently of all other causes through external, violent, and purely accidental means," with provision, under the title "Special Accident Indemnities," for payment in case "sunstroke . . . due . . . to external, violent and accidental means, shall result . . . ," the beneficiary could recover for the death of insured from sunstroke suffered on a warm afternoon while walking the city streets in the ordinary course of his occupation as a collector of accounts. (Pp. 584-594.)

2.—Same—Death from Disease.

Insurance against sunstroke due to external, violent, and accidental means, does not limit the recovery to the case only in which insured became by accident exposed to the injury. In view of previous decisions treating sunstroke as a disease, not to be classed as external, violent and accidental, this special provision should be construed as using the word in its popular sense in which it is looked on as an external and accidental cause of death. (Pp. 585-589.)

3.—Same.

Accident, as distinguished from life insurance, involves the element of bodily injury, but covers death by disease when that is caused by such injury (tetanus or hydrophobia). To insure against sunstroke as a disease would be foreign to the ordinary functions of an accident company where the accident was not a bodily injury causing the disease, but merely one furnishing a condition under which the disease was contracted (malaria). (Pp. 587-589.)

4.—Same.

Treating sunstroke as a form of bodily injury, rather than a disease, it should be considered as due to "accidental means" where the result was something unforeseen, unexpected, and out of the ordinary course, though arising from voluntary exposure of himself by insured to solar heat. (Pp. 589-591.)

5.—Same.

Sunstroke caused by the sun's rays has all the elements of an accident; and the limitation of recovery by the terms of the policy to such stroke when caused by "accidental means" would not be ineffective as including all cases of heat prostration, but would exclude recovery where death was due to exposure to artificial heat voluntarily, and not accidentally incurred. (P. 591.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Mrs. Bryant sued the Continental Casualty Company, and appealed from a judgment for defendant. On its affirmance she obtained writ of error.

B. F. Louis, for plaintiff in error.—The policy of insurance sued on, providing that the defendant company would pay the principal sum in case of death from sunstroke due to external, violent and accidental means, and it being agreed that the insured "was overcome by the heat of the sun, or suffered a sunstroke" while walking about the streets of the city of Houston, and while making more collections than usual, in his occupation as collector of accounts, and that the heat of the sun

was more intense than usual at the time, and that he died from said sunstroke, such evidence shows death by sunstroke due to accidental means, within the terms of the policy. Maryland Cas. Co. v. Hudgins, 72 S. W., 1047; same case, 97 Texas, 124; Western Commercial Trav. Assn. v. Smith, 29 C. C. A., 223, 85 Fed., 401; Insurance Co. v. Burroughs, 69 Pa. St., 51; Paul v. Trav. Ins. Co., 112 N. Y., 472, 23 L. R. A., 372; Horsfall v. Pacific Mut. Life Ins. Co., 32 Wash., 132, 63 L. R. A., 425; Hutchcraft's Ex'r v. Trav. Ins. Co., 87 Ky., 300, 8 S. W., 570; Acc. Ins. Co. v. Crandal, 120 U. S., 527; Trav. Ins. Co. v. McConkey, 127 U. S., 66; Atlanta Acc. Assn. v. Alexander, 104 Ga., 709, 30 S. E., 939, 32 L. R. A., 188; Hamlyn v. Crown Acc. Ins. Co. (1893), 1 Q. B., 750; Lovelace v. T. P. A., 126 Mo., 104, 28 S. W., 877; Railway O. & E. A. A. v. Johnson, 109 Ky., 261, 58 S. W., 694; Am. & Eng. Ency. Law, 1, p. 291; Cyc., 1, p. 249; International Travelers Assn. v. Bramun, 169 S. W., 389; McGlinchey v. Casualty Co., 80 Me., 251, 14 Atl., 13, 6 Am. St. Rep., 190; Young v. Railway Mail Assn., 126 Mo. App., 325, 103 S. W., 557; Beile v. Protective Assn., 155 Mo. App., 629, 135 S. W., 497; Gallagher v. Fidelity & Casualty Company of New York, 163 App. Div., 556, 148 N. Y. Supp., 1016; Cooley's Brief on Insurance, vol. 4, secs. 3156-7.

*John Charles Harris,* also for plaintiff in error, cited.—Young v. Railway Mail Assn., 126 Mo. App., 325, 103 S. W., 557; Mutual Acc. Assn. v. Barry, 131 U. S., 100; Horsfall v. Pac. Mut. Life, 63 L. R. A., 425; Nax v. Trav. Ins. Co., 130 Fed., 985; Standard Life v. Schmalz, 66 Ark., 588, 53 S. W., 49; Atlas Acc. Assn. v. Alexander, 42 L. R. A., 188; Wilkinson v. Trav. Ins. Co., 72 S. W., 1016; Rodey v. Travelers Ins. Co., 3 N. M., 543, 9 Pac., 348; McClinchey v. Fed. Cas. Co., 14 Atl., 13; West. Com. Trav. v. Smith, 40 L. R. A., 653; Summers v. Fed., etc., Co., 84 Mo. App., 605.

*M. P. Cornelius, Gill, Jones & Tyler, Manton Maverick,* and *H. L. Stone, Jr.,* for defendant in error.—The agreed facts do not show that the death of the insured was caused by sunstroke due to accidental means. While going about his ordinary business, he was exposed to the heat of the sun. Such exposure was incurred voluntarily while the insured was in possession of all his faculties. As a consequence of his voluntary and conscious act, accomplished in precisely the way intended, he suffered a sunstroke, or heat prostration. While such prostration was unexpected, and therefore accidental in the sense that every disease and every unexpected occurrence is accidental, the means by which the sunstroke was produced were not accidental, since such means were adopted by the insured consciously and voluntarily, and there was no unintentional element in the means bringing about the unfortunate result.

In the following cases, all construing policies of accident insurance, it has been held: (1) That sunstroke is a disease; (2) that such a

disease is not effected by accidental means when it is sustained by the insured when he is doing just what he intends to do, in the way intended. Bryant v. Continental Casualty Co., 145 S. W., 636; Semancik v. Continental Casualty Co., 56 Pa. Superior Court, 392; Dozier v. Fidelity & Casualty Co., 46 Fed., 446; Herdic v. Maryland Casualty Co., U. S., Cir., 146 Fed., 396, affirmed, 149 Fed., 198; Sinclair v. Maritime Pass. Assur. Co., 3 Ellis & Ellis, 478.

In each of the following cases it has been held that there can be no recovery under a policy insuring against death occasioned by injury effected through accidental means, where such injury, although totally unexpected, undesigned, and not the probable effect of the means used, is occasioned by a voluntary act on the part of the insured, executed in an expected and ordinary way, since such injury, though accidental, is not effected through accidental means. While many more might be cited, we have carefully refrained from including any case not squarely in point. United States Mut. Acc. Assn. v. Barry, 131 U. S., 100, affirming Barry v. United States Mut. Acc. Assn, 23 Fed., 712; McCarthy v. Travelers' Ins. Co., 8 Bissell, 362; Westmoreland v. Perf. Acc. Ins. Co., 75 Fed., 244; Shanberg v. Fidelity & Casualty Co., 158 Fed., 1, affirming 143 Fed., 651; Fidelity & Casualty Co. v. Stacey's Exs., 143 Fed., 271; Hastings v. Travelers' Ins. Co., 190 Fed., 258; Southard v. Ry. Pass. Assur. Co., 34 Conn., 574; Carnes v. Ia. State Traveling Men's Assn., 106 Ia., 281, 76 N. W., 683; Feder v. Ia. State Trav. Men's Assn., 107 Ia., 538, 78 N. W., 252; Smouse v. Ia. State Trav. Men's Assn., 118 Ia., 436, 92 N. W., 53; Lehman v. Great Western Acc. Assur. Assn., 153 Ia., 118, 133 N. W., 752; Appel v. Aetna Life Ins. Co., 83 N. Y. Supp., 238, affirmed without opinion, 180 N. Y., 514; Niskern v. Uni. Bro. of C. & J. of Amer., 87 N. Y. Supp., 640; Schmid v. Ind. Trav. Acc. Assn., 42 Ind. App., 483, 85 N. E., 1032; Cobb v. Pref. Mut. Acc. Assn., 96 Ga., 818, 22 S. E., 976; Ludwig v. Pref. Acc. Ins. Co., 113 Minn., 510, 130 N. W., 5; Standard Life & Acc. Ins. Co. v. Schmaltz, 66 Ark., 588, 53 S. W., 49; Clidero v. Scottish Acc. Ins. Co., 29 Scottish Law Reporter, 303; Scarr v. Gen. Acc. Assur. Corp., 1 King's Bench, 387.

Mr. Chief Justice PHILLIPS delivered the opinion of the court.

Mrs. Amelia Bryant, joined by her husband, brought this action to recover upon an accident insurance policy issued by the defendant in error to Calvin R. Perry, her brother, in the sum of $2000, in which she was named as beneficiary. The case was tried without a jury, resulting in a judgment for the company, affirmed by the Court of Civil Appeals. 145 S. W., 636.

Calvin R. Perry suffered a sunstroke on an unusually warm afternoon in the month of August while walking upon the streets of Houston in the ordinary course of his occupation as a collector of accounts, from which he died on the following day. The issue presented is whether

there is any liability under the policy for a death by sunstroke occurring under such circumstances.

The general insuring clause of the policy reads:

"If the insured, while this policy is in force, shall receive personal bodily injury (suicide, sane or insane, not included) which is effected directly and independently of all other causes through external, violent and purely accidental means, and which causes at once and continuously after the accident total inability to engage in any and every labor or occupation, the company will pay indemnity for loss of life, limb, limbs, sight or time resulting therefrom."

Part VI of the policy, under the title, "Special Accident Indemnities," contains the following provision:

"If sunstroke, freezing, or hydrophobia, due in either case to external, violent and accidental means, shall result, independently of all other causes, in the death of the insured within ninety days from date of exposure or infection, the company will pay said principal sum as indemnity for loss of life."

The defense of the casualty company is, that sunstroke is a disease, and therefore not an accidental happening; that as a disease it was named as a risk of the policy; and that no indemnity is due for death resulting from it, under the policy, unless the preceding exposure be itself the consequence of an accident. This is the construction, in other words, which the company insists should be given the term, "due to external, violent, and accidental means," as used in the policy in relation to sunstroke; and such was the view of the case taken by the District Court and the Court of Civil Appeals, the company being held exempt from liability because Perry voluntarily went into the sun. As illustrative of the casualty company's theory, we take the following instances from its brief as presenting, in a general way, the state of circumstances necessary to exist, under its contention, for the creation of any liability under a policy of this kind for the suffering of a sunstroke by an assured: The happening of a shipwreck or train wreck, as a consequence of which he is exposed to the sun, with a sunstroke resulting. The breaking down of a vehicle in which he might be riding, causing similar exposure. Or being thrown from a horse, and thereby compelled to walk some distance on a hot day. Etc., etc.

This position, it will be observed, requires that the prior accident be alone regarded as *the means* by which the sunstroke is effected. If sunstroke is a disease and therefore caused, never accidentally, but naturally, by excessive heat, it follows from the argument that the actual casualty, in such a case, is not the sunstroke, but the preceding accidental occurrence. Under this theory all idea of there being any element of accident in the sunstroke itself, or in the operation and effect of the abnormal heat as a direct cause of the stroke, is repudiated; and all that is unforeseen, unexpected, and unusual in the general event is related to merely the prior accident. It declines to consider ordinary sunstroke as having in any sense the quality of an immediate and fortuitous in-

jury; and treats it merely as a result, and more than that, a result not directly incurred in or produced by an accident, it will be noted, but as only influenced by a condition or situation which an accident creates.

One trouble with this position is that it assumes sunstroke was insured against in the policy merely as a disease, when a vital question in the case is whether such was the purpose of the policy. Another is that it denies any standing as "a means" to that which is essentially the cause, or in any event a very important part of the cause, of every sunstroke, namely, the operation of the rays of the sun if it be the usual form of sunstroke, or the operation of artificial heat if it be induced, as it may be, by other than solar heat (Continental Casualty Company v. Johnson, 74 Kan., 129, 85 Pac., 545), and is alone that which, in common understanding and in fact, makes the cause of a sunstroke "external and violent."

There have been certain decisions which announce that sunstroke is a disease. Among them, are Sinclair v. Maritime Passengers Assurance Company (England, 1861), 3 Ellis & Ellis, 478, and Dozier v. Fidelity & Casualty Company of New York (U. S. Dist. Court), 46 Fed., 446. But whatever it may be, technically, it is not regarded as a disease in the popular mind. In the common understanding it is accounted a kind of violent personal injury, from the very idea of sudden and external force carried by the word. If classed by medical authorities as, technically, a disease, as to which it is not improbable that there is a conflict of expert view, to none but an expert medical mind would the provisions of this policy have carried the significance that it was insured against as a disease. To men in general, such as those with whom a company of this kind deals and to whom its policies are issued, whether educated or ignorant, the use of the term in any character of contract, and particularly, we think, in an insurance contract, not generally insuring against death by disease, but against death from accidental injury, would have denoted merely what sunstroke is commonly understood to mean,— heat prostration, frequently a casualty, a species of bodily injury, distinct in its kind and individual in its cause, and of known and not unusual occurrence. With the term having, as it does, this recognized popular meaning distinctly different from any technical significance it may possess, the proposition that the latter must prevail in the construction of the policy, is not to be allowed. But let the question be further tested.

The best method for arriving at the accurate construction of a contract is for a court to simply put itself in the place of the parties, and, having particular regard to the subject matter of the agreement, endeavor to ascertain their intention in their use of the terms employed. Let that method be applied here. What is the result? That Perry, the assured, intended, under an accident policy, to insure against sunstroke, as, technically, a disease, and, in addition to that, as a disease which could be accidentally effected only in some such involved remote, and improbable way as the casualty company here contends it is possible

for a sunstroke to be accidentally caused, or that he understood such to be the effect of the policy, is hardly to be believed. Nor, in our opinion, is any such intention to be attributed to the casualty company in the making of the contract, if it is to be credited with a purpose, as it ought to be, of writing an accident insurance contract, as distinguished from a life insurance policy, and providing accident insurance against death occasioned by an accidental sunstroke under a policy agreement having in fact that virtue. This is made manifest, we think, by simply considering the general principles of personal accident insurance and the character of risk it is supposed and intended to cover, with which the present policy is presumably consistent.

The theory of such insurance, under the ordinary accident insurance contract, necessarily involves the element of bodily injury. That is, primarily the kind of risk it contemplates and for which its indemnity is provided. This is manifest in the general insuring clause of the present policy, one common, in its general terms, to all ordinary accident policies. It runs: "If the insured, while this policy is in force, shall receive personal bodily injury . . . which is effected directly and independently of all other causes through external, violent and purely accidental means . . . the company will pay indemnity, etc.". It is not life insurance, but casualty insurance; and under the usual form of policy the nature of the casualty which gives rise to the liability of the insurer is that which consists in some character of bodily injury to the assured, either external or internal, accidentally caused, though the resulting effect be the development of a form of disease. There have been many adjudications on accident policies where the result of the different particular occurrences was the suffering by the assured of this or that form of disease, such as tetanus, or blood poisoning, and in some instances, the more usual kinds of disease, as pneumonia, peritonitis, rheumatism, fever; but the liability of the insurer has been upheld in all such cases, arising under the ordinary form of policy, because of the finding that the assured had accidentally sustained some character of antecedent bodily injury, of which the disease was but the proximate result.

If sunstroke is a disease, as the casualty company here contends, that is, a kind of brain fever, and was so dealt with in the present policy, its contraction, as we may in this connection call it, from exposure to excessive heat, its accepted inducing cause, must be regarded as proceeding from a purely natural cause; just as the contraction of malaria from subjection to the conditions which produce that form of disease is recognized as due to a natural cause. Regarded as a disease and as thus naturally produced, there is no element of bodily injury about it, any more so than there is in the ordinary disease of malaria. Neither, in this view, would sunstroke be any more the proper subject of risk in an accident policy than would malaria; nor would the proper basis of liability under such a policy be any more furnished by death resulting from it, than by death from malaria.

The history of accident insurance, as found in the many judicial decisions upon the subject, reveals the constant denial by accident companies of any liability, under the ordinary form of policy, for disease, though accidentally effected, unless proximately caused by a bodily injury, and their constant maintenance of the proposition that any other theory of their liability is opposed to the general scheme of accident insurance. This position, generally, has been sustained by the courts; close questions having at times arisen as to whether the given physical condition was to be properly deemed a bodily injury. Not only, therefore, is insurance against disease, as such, not within the general scope of accident insurance; but equally, disease effected by accident is not within its theory, as its interpretation by accident companies is disclosed in the decisions, unless there is distinctly present the element of bodily injury.

Under the contention of the Casualty Company, the sunstroke provision of its policy is a plain contradiction of this essential principle of the character of insurance it is intended to provide. It is a repudiation of the general insuring clause of the policy, as expressing the kind of risk which the policy covers, the risk of "personal bodily injury . . . effected by external, violent and accidental means." Accepting the company's construction of the policy, it is in the position, in the first place, of making a disease, rather than a bodily injury, the subject of an accident risk, and further, a disease, the accidental causing of which in the way it says is necessary in order for it to be accidentally effected, would present no element whatever of bodily injury; with the accident, in truth, not directly causing the disease, but, at most, only producing a condition favorable for its being incurred.

Hydrophobia is a disease. But its common cause is the bite of an animal, a bodily injury; and its inclusion in the policy is therefore to be logically accounted for. It is generally thought of as a kind of casualty. But why was sunstroke here made the subject of accident insurance, in which the nature of the risk is some form of bodily injury, if in the construction of the policy it is to be considered as a disease and is hence without any element of bodily injury in its cause? It was in our opinion expressly designated as a risk, not as a disease, but for the purpose of avoiding the effect of those decisions which have held it to be a disease,—in adoption of its popular conception as a species of personal injury, capable of accidental occurrence, and therefore properly a subject of this kind of insurance.

In the early Sinclair case, supra, decided in England in 1861, it was held that no liability arose for an ordinary sunstroke under an accident insurance policy providing for indemnity in the event of *"personal injury* from, or by reason or in consequence of, any accident, etc." In the decision sunstroke was treated as a disease. So considered, it has no quality of personal injury about it, as already stated; and, under that theory, the determination that there was no liability under the policy, was sound. This holding was followed in the Dozier case, where the

policy was in the same general terms,—providing insurance against *"bodily injuries"* sustained through external, violent and accidental means," as does the general clause of the present policy. In neither case did the policy designate sunstroke as a risk. It is to be assumed that the present policy was drawn in the light of that holding. That the purpose was to make sunstroke a part of the contract risk, as a distinct feature of the policy, is evident. We regard it as equally manifest that the purpose also was to so make it a feature of the risk in such a way as to avoid the effect of the holding in the Sinclair case, and others like it,—under which, if treated as a disease, it would not fall within the general risk of the policy,—and as would be, at the same time, consistent with such risk as expressed in the general insuring clause, and in harmony with the theory of such insurance. This could only be done by in the policy recognizing it to be what in the common understanding it is considered,—a form of personal injury, and, when suffered under certain circumstances, a casualty. Such, we hold, is the meaning and force of the sunstroke provision of the policy.

Considered as a form of bodily injury, the question as to when sunstroke is to be properly deemed as accidentally effected, assumes a different character from that presented if it is regarded merely as a disease. The difficulty of introducing an accidental cause into its occurrence, treated as a disease, is apparent from the illustrations made in the company's brief as to the state of the circumstances necessary, in that view, to its accidental happening. But treated as an injury, it is clear that it may be accidentally effected in ways much less involved and remote. When, therefore, is the suffering of sunstroke to be regarded as due to "accidental means," in the sense in which the latter term, in its relation to sunstroke, is used in the policy?

The word "means" is employed in the policy in the sense of "cause"; the phrase "due to accidental means" is one of qualification; and the purpose of its use in the ordinary accident policy is to limit the liability of the insurer to injuries effected by an accidental cause, as distinguished from those which are merely accidental in their result. It is generally recognized, as it should be, that where a man undertakes to do a certain thing by a particular means, and the result of his act is such as follows, in not an unusual or unexpected way, from the means voluntarily used, it can not be said to be due to an accidental cause, though, in the sense that it was not intended, an accidental result is the consequence. In the numerous adjudicated cases upon the subject, therefore, it is determined that where by the terms of the contract the risk insured against is an injury effected by "accidental means," the element of accident must consist in that which produces the injury, rather than in the mere fact that an injury occurs. The rule itself is well established. It is its application to the varying kinds of accidental injuries which is sometimes involved in difficulty, occasioning, in some instances, divergent opinions by the courts.

The inquiry at once arises as to when the cause of an injury is to be

considered as accidental; that is, what is the proper construction of the term, "accidental means," as used in insurance policies of this nature? The best definition of the term in the books is that given by the United States Supreme Court in the leading case of Mutual Accident Association v. Barry, 131 U. S., 100. There, the assured, Dr. Barry, with two other physicians had visited a patient living in a house behind a drug store. They came out of the house on a platform which was between four and five feet from the ground. By getting down from the platform it was but a short distance to the drug store to which they desired to go. They jumped from the platform to the ground. The other two, who jumped first, alighted safely; but the evidence was that Dr. Barry, though alighting upon his feet, jumped heavily, the sound, as he struck the ground, being as if he had come down solidly on his heels, like an inert body. Shortly afterwards he appeared ill and vomited, and died nine days later, having retained nothing on his stomach and having passed nothing but blood and mucus. There was evidence that the cause of his death was a stricture of the duodenum, due, according to the plaintiff's contention, to the jump. The accident policy on which the suit was brought, limited liability for death from bodily injuries, as does the policy here, to those effected through external, violent and accidental means. The Supreme Court, through Mr. Justice Blatchford, expressed its approval of the trial court's instruction to the jury under this provision of the policy in the following language, which embodies the substance of the instruction and has since served as an accepted definition of the term "accidental means":

"The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected'; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In affirming the judgment for the plaintiff, the court also said:

"It is further urged that there was no evidence to support the verdict because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed not only that the deceased intended to alight safely; but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not."

Upon the admitted facts, was the sunstroke suffered by Perry, the

assured, under this clearly stated general rule, an accident? It was, undoubtedly. He was at the time walking the streets in the ordinary way, unconscious of any danger from the heat of the sun, as is to be plainly inferred from the stated facts, with apparently no apprehension of injury from that source, and a sunstroke suddenly befell him. True, his exposure to the sun was voluntary. But that does not conclude the question. Though the exposure be regarded as "the means" of his injury,—to our minds an erroneous view,—and as purely voluntary, it can not be said that the result was one following "in a not unusual or unexpected way" from such means. On the contrary, in the course of the exposure, the act immediately preceding the injury, the sudden prostration occurred, not the usual happening under such circumstances in common experience, but having forcibly in its event the elements of "something unforeseen, unexpected," and out of the ordinary course.

In the Barry case, the jump of the assured, which constituted the act immediately preceding his injury and occasioned it, was likewise voluntary and intentional. It was "the means" of the injury. But the court repudiated the proposition that because of its having been voluntary, the resulting injury could not be regarded as due to an accident. It was held to have been an accident, notwithstanding the voluntary nature of the act which caused it, for the reason that it was an unforeseen result, following, not naturally from the act, but in an unusual and unexpected way.

The question might well be rested at this place though the exposure to which the assured subjected himself be considered as "the means" of his injury. It is a mistake, however, to indulge that assumption. Exposure to the heat is the cause of a sunstroke only in the sense that exposure to any kind of external force furnishes the occasion of an injury as the result of its operation. In cases arising under accident insurance policies, where possible negligence on the part of the assured does not affect the question of liability, the efficient cause of a sunstroke, the *vis major* which inflicts the injury, is necessarily the excessive heat; and it must, therefore, be deemed "the means" of the injury. If it be solar heat, it is not caused, and, when operating naturally, is not controlled by human agency; and under such circumstances it is impossible to associate with it the idea of its "voluntary employment"; or to regard as not an accident an injury from it when suffered as here shown, in the sense that under certain conditions, as declared in the rule above noted, an injury resulting from a means voluntarily employed will not be so deemed.

A sunstroke caused by the sun's rays, happening under the circumstances found in this case, is in our opinion an accident; as clearly so as is a lightning stroke. Hutchcraft's Executors v. Travelers' Insurance Company, 87 Ky., 300. It befell the assured without any human agency; and in the sudden, unexpected and unusual way in which he was affected by the heat as its cause, it had all of the elements of an accident in its occurrence and result.

It was urged in the argument that if the sunstroke which brought about the death of Perry is held to have been an accident, it would amount to a holding that every sunstroke suffered is an accident; and, as a consequence, the term, "due to accidental means," is denied any force as an express limitation upon the insurer's liability for sunstroke. This, however, does not follow from the decision, as is disclosed when once it is recognized, as is held in Continental Casualty Company v. Johnson, already noted (74 Kan., 129), that sunstroke may be caused by artificial, as well as solar, heat; and the term has that meaning in an accident policy, in the absence of a contrary qualification. There is no decision, as we are aware, opposed to this holding.

In the Johnson case the policy appears to have been one also issued, as is to be inferred from the name of the company, by the present defendant in error. It contained a provision as follows:

"The loss of . . . time, as above provided, due solely to . . . sunstroke or freezing due solely to necessary exposure while engaged in his occupation, shall be deemed to be due to external, violent and purely accidental causes and shall entitle the insured to full benefits according to the terms of this policy."

The assured, Johnson, was a flue welder, and while engaged in his occupation was overcome by heat from a forge or furnace near which he worked, becoming ill as the result and suffering loss of time; whereupon he brought an action on the policy, claiming that his loss was due to sunstroke. As is stated in the opinion, it was argued in behalf of the defendant company that the language of the provision quoted indicated "a conception of sunstroke as something of sudden and unexpected occurrence, more or less in the nature of an accident, and that this conception is only appropriate to an attack brought on by exposure to the sun's rays." It was admitted by the insurer in that case, in other words, both in its policy provision and in the interpretation of it which it invoked, not only that a sunstroke suddenly and unexpectedly suffered from the heat of the sun in the course of a necessary exposure, is to be regarded as an accident; but, furthermore, that only such a sunstroke, so suffered, is to be deemed as "due to accidental means." The court, in determining the case, overruled the contention that the term, "sunstroke," as found in the policy, denoted only a condition brought about by the heat of the sun, and held that a sunstroke caused by artificial heat was equally within the risk of the policy.

If, as it thus appears, "the means" of a sunstroke may be artificial heat,—something which is produced and may be controlled by human agency,—under the rule above stated, "that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means," it follows that sunstroke, effected by such means, may occur under such circumstances as not to constitute it an accident, just as any other form of injury proceeding from a "means" likewise caused by and within the

control of human agency may, under similar circumstances, be suffered and, as determined by the same rule, be not an accident.

The rule, just referred to, is but the statement of a fact of human experience with respect to all artificial agencies and their uses,—the announcement of the general recognition, that an injury may result from the particular voluntary use of such an agency for a given purpose, but not be an accident, because ensuing naturally, and in a usual and reasonably to be expected way from the means thus employed. The consequences of the use of artificial heat are not to be exempted from its application. Where, because of the particular circumstances, the rule would apply to any other character of injury resulting from a given cause, it would, for the same reason, likewise apply to prostration brought about by artificial heat. While not as probable, from the nature of the injury, as in the case of other kinds of injury, it is possible, therefore, under this recognized rule, for sunstroke to occur under such circumstances as not to be an accident; and our holding does not exclude that possibility.

There has been no decision of the question presented in this case by a court of last resort in any jurisdiction. It has been determined by appellate courts in Pennsylvania, Indiana and New York, in three different cases, in addition to the decision of the Court of Civil Appeals, in the present case: Semancik v. Continental Casualty Company, by the Pennsylvania Superior Court (1914), 56 Penn. Sup. Court, 392; Elsey v. Fidelity & Casualty Company of New York, by the Appellate Court of Indiana (1915), 109 N. E., 413; and Gallagher v. Fidelity & Casualty Company of New York, by the Appellate Division of the Supreme Court of New York (1914), 148 N. Y. Supp., 1016, now pending in the Court of Appeals of that State. In the Semancik case, the form of policy was the same as the policy here, and issued by the same company. In the Elsey case, the general clause of the policy, insuring against "bodily injury sustained through accidental means," was followed by a provision that, "sunstroke suffered through accidental means should be deemed a bodily injury within the meaning of the policy." In both cases it was held that sunstroke caused by the heat of the sun and occurring under circumstances like those in the present case, is not to be regarded as an accident. In the Gallagher case, under a policy in the same terms and issued by the same company as that considered in the Elsey case, it was determined that such a sunstroke, suffered under like circumstances, is an accident, and the insurer was therefore liable. In the Semancik opinion it was said that the verdict, which was for the plaintiff, "could only be sustained by the determination of the court that sunstroke was purely accidental and not a disease," which ignored the important fact that sunstroke was insured against in the policy, in our view, not as a disease, but as an injury. That the exposure was voluntary, appears to have been a ground of the decision; as well as the construction given the policy, that there was no liability for sunstroke

unless occurring in consequence of a preceding accident. In the Elsey case the question was determined under a rule announced by the same court in a previous decision, that, "where an injury occurs as the direct result of intentional acts, it is not produced by accidental means," which we decline to recognize as the true rule. This would practically mean that no injury immediately occurring in the course of an intentional act could be an accident. A large number of the injuries, plainly accidents, are suffered in the performance of intentional acts. Whether the immediately preceding act was intentional, is a mistaken test of the question. The proper and true test, in all instances of voluntary action, is that defined in the Barry case: If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs which produces the injury, it is accidentally caused. If the injury followed in a usual or reasonably to be expected way from the means voluntarily employed, that is, the given voluntary act, it is not a result accidentally effected.

The rule followed by the Indiana court is substantially that announced by the Supreme Court of Connecticut in Southard v. Assurance Company, 34 Conn., 574, from whose views on the subject the Supreme Court of the United States expressed its dissent in the Barry case.

We are unwilling to follow the holding in the Semancik and Elsey cases, and are content to rest the decision upon the grounds we have stated.

The question is an important one, and we have been deeply concerned in its correct decision. It challenges careful thought, and, sensible of its difficulty in certain phases, that we have endeavored to give it. That which is sound upon principle ought to be the law; and believing that the conclusion reached is thus supported, it is adopted as our decision of the question.

The judgments of the Court of Civil Appeals and the District Court are accordingly reversed. It is ordered that judgment be entered for the plaintiff in error for the amount of the policy, with the statutory damages and attorneys' fees of $225, agreed to be reasonable in amount, with legal interest from the date of the judgment of the District Court.

*Reversed and rendered.*