Leonard F. SIVLEY, Appellant,

v.

AMERICAN NATIONAL INSURANCE COMPANY, Appellee.

No. 8012.

Court of Civil Appeals of Texas, Amarillo.

May 4, 1970.

Rehearing Denied June 8, 1970.

John H. Mikkelsen, Storey, Hightower & Neely, Vernon, Bell, Sowell & Neal, Quanah, Tex., for appellant.

Fillmore & Fillmore, and H. Dustin Fillmore, Wichita Falls, for appellee.

JOY, Justice.

The appellant, plaintiff below, brought suit to recover on life insurance policy for additional accidental death benefits provided by supplemental agreement to a life insurance policy issued to plaintiff's son by appellee, defendant insurance company in the trial court. From directed verdict for defendant, the plaintiff has perfected this appeal. Reversed and remanded.

The life insurance policy involved provided for a $5,000.00 primary payment upon death of the assured and an additional payment of $10,000.00 in the event assured's death was accidental. The additional accidental death benefits provision contained numerous exclusions, only one of which is pertinent here and that one provided that the additional death benefits were not payable in the event that the assured was "engaging in an illegal occupation or committing or attempting to commit an assault or a felony." The deceased visited his girl friend at her home from approximately 9:30 P.M. on February 12, 1967 to 1:30 A.M. February 13, 1967, at which time he left in his automobile to return to his home. In proceeding on a divided highway towards his home, the deceased was proceeding westerly on the portion of the divided highway reserved for east bound traffic; in other words, he was travelling the wrong direction as provided for that lane or section of the highway, and in topping an overpass was in a head-on collision with another vehicle. The two occupants of the other vehicle as well as the insured were killed in the head-on collision. Upon investigating the accident the justice of the peace ordered that a blood test be performed upon the deceased insured for chemical analysis to determine whether or not deceased was intoxicated. The investigat-

ing officers then furnished the receptacle for the withdrawal of the blood sample from deceased's body by a mortician at the funeral home where deceased's body was taken. Upon analysis by the Department of Public Safety's laboratory, the blood specimen reflected a .16% alcohol content, sufficient to indicate that the deceased was intoxicated based upon recognized standards. Upon a jury trial, and after the close of the evidence, but prior to arguments, the defendant filed its motion for instructed verdict which the trial court overruled. Upon deliberating for an undisclosed period of time, the jury was unable to answer the three special issues submitted and prior to declaring a mistrial and dismissing of the jury, the court permitted the defendant to again submit its motion for instructed verdict and same was granted at that time.

The plaintiff assigns as error the action of the trial court in granting the instructed verdict and finding by implication that the deceased did not meet his death within the provisions of the accidental death benefits provision of the insurance policy. The trial court made no specific findings in its judgment and we do not think that the court was required to do so although we think that it would be the better practice. Therefore, we will look to the defendant's grounds as stated in its motion for instructed verdict wherein the defendant lists two grounds: (1) the deceased "did on the occasion in question knowingly, voluntarily and with full appreciation of the risk and hazards involved enter upon and travel in the wrong direction on a divided expressway designated as U. S. Highway 287", or (2) "his conduct was the result of intoxication".

The first ground asserted by defendant is not a valid ground. The mere fact that the deceased was intentionally doing an act out of which the collision occurred does not make the collision nonaccidental. Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673 (Sup.Ct.). Defendant-appellee cites Bryant, supra, in part:

"If in the act which precedes the injury, though an intentional act, *something unforeseen, unexpected,* and *unusual* occurs, which produces the injury, it is accidentally caused. *If the injury followed in a usual or reasonably to be expected way from the means voluntarily employed, that is, the given voluntary act, it is not a result accidentally effected.*" (Emphasis defendants)

Defendant urges that because the deceased had driven the wrong direction on the one-way portion of the expressway a number of times theretofore, that he was charged with knowledge, in effect, that he would have a head-on collision. We do not agree with this assumption. A test of whether or not a death is accidental within the terms of a policy supplement has to be determined from the standpoint or viewpoint of the insured. National Life & Accident Ins. Co. v. Knapp, Tex.Cir.App., 430 S.W.2d 84 (Tex.C.A., ref'd n. r. e.). The evidence reflects that the deceased had driven on a number of occasions in the wrong direction on this particular section of the divided expressway in taking a short cut home and apparently had not suffered a prior head-on collision. We think a reasonable inference could be drawn that the deceased, through his past experiences, was of the opinion he could avoid a head-on collision. The fact that on this occasion, because of the meeting of the automobiles at the very crest of the hill or overpass, neither the deceased driver nor the driver of the other vehicle had sufficient time after coming into each other's view within which to turn to avoid the collision, does not in our opinion render the occurrence, as a matter of law, nonaccidental. We think the evidence presents an issue of fact to be resolved by the jury or the trier of the facts with a proper definition of "accidental means". Suicide is also listed as an exclusion in the accidental death benefits supplement. The defendant did not plead this exclusion and no issue thereon was made at the trial. Accidental death as a result of the insured's driving of an automobile the

wrong direction on a one-way portion of a street or highway is not listed as an exclusion and we can not amend or change the contract of the parties. In 29A Am.Jur., Sec. 1238, p. 376, we find in part:

"In other words, one may voluntarily and knowingly, with an appreciation of the attending risk, expose himself to danger and be killed and yet his death may be accidental, as where a driver of a vehicle is killed or injured as a result of miscalculation of distance, speed, or his own capabilities."

Perhaps the deceased, having driven similarly before, underestimated his capabilities.

■ Further, the law we think is clearly settled that an instructed verdict will lie only where there is no evidence of probative force to sustain the losing party's position, with no room for reasonable minds to differ. See Rule 286, Texas Rules of Civil Procedure and 4 T.J.2d, Sec. 835 and cases cited thereunder. Herein the charge was given to the jury which deliberated for an undisclosed period of time and revealed to the trial court their inability to reach a decision on any of the issues submitted. We presume the jury was composed of reasonable minds. The evidence, viewed from the most favorable standpoint of the plaintiff-loser, we think clearly sustains this presumption.

■ Defendant's second ground in its motion for instructed verdict recites that "his (deceased's) conduct was a result of intoxication." Intoxication as such is not an exclusion listed in the policy involved herein. However, in the event the deceased was intoxicated at the time of the collision that caused the death of the two parties in the other vehicle, then Art. 802c, Vernon's Penal Code, would require that the offense become a felony, which is an exclusion. In viewing the evidence in the most favorable light of the plaintiff, we find evidence from which a jury could find that the deceased was not intoxicated.

■ Plaintiff assigns as error the action of the trial court in admitting into evidence the results of the alcohol blood test performed upon the deceased per the instructions of the justice of the peace for the reasons that (1) blood was taken without the deceased's consent, (2) without a valid order and (3) the act violated Art. 49.01 and 49.03 of the Vernon's Ann. Texas Code of Criminal Procedure and the 14th Amendment of the Constitution of the United States. The constitutional question we think has been adequately settled by the U. S. Supreme Court in cases cited by the plaintiff, including the question of lack of consent. That court has held that the lack of consent given to a blood test does not violate the constitutional rights of a citizen. Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); Jacobsen v. International Transport, Inc., 8 Cir., 391 F.2d 49 (1968); also Schmerber v. California, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966). The rights accorded an individual against self incrimination are personal and can be exercised only by that party. See Texas Law of Evidence, McCormick & Ray, Sec. 434, p. 368. A very similar case is found in Hartman v. Harder, 322 S.W.2d 555 (Tex.Civ.App., n. w. h.). In that case a mortician also withdrew the blood sample for the test and same was admitted in the civil suit for damages. The court held therein that no constitutional rights were violated, although the blood test report was ruled inadmissible for reasons not found in this case. Plaintiff further urges that the defendant must prove the deceased was intoxicated beyond a reasonable doubt as any criminal case. We find no Texas cases directly in point, but in 124 A.L.R. 1380 we find this statement: "It seems to be well settled in substantially all the jurisdictions in this country, or at least in all those in which the question has been directly raised, that facts constituting a crime need not be proven beyond a reasonable doubt if they are at issue in a civil case." Therefore, we will follow the majority and hold that the facts constituting intoxication need be proven by a

preponderance of the evidence as in all civil suits.

Defendant-appellee urges that there is no evidence which contradicts the results of the blood test. A blood test is not conclusive evidence of intoxication unless there is no evidence of probative force to the contrary. In reviewing the evidence most favorable to the plaintiff, we find that the girl friend of the deceased testified that the deceased arrived at her home about 9:30 P.M. and left there at approximately 1:30 A.M., some four hours later. She further testified that during this period the deceased had only two drinks of bourbon consisting of about 1 ounce each. She further testified that the deceased was not showing any of the usual signs of intoxication such as slurred speech, flushed face, or lack of balance. She further testified that he did not appear to have been drinking upon his arrival at her house and that she was familiar with the appearance and actions of a person who was intoxicated. Further, the evidence reflects that the deceased had visited at a service station between 8:00 and 8:30 P.M. just prior to going to the home of his girl friend. The station manager had visited briefly with the deceased (some ten minutes) and testified that the deceased was not intoxicated at that time and that he smelled no liquor on his breath. We think from this evidence it can be reasonably inferred that at the time of the collision shortly after 1:30 A.M. that the deceased was not intoxicated. The issue of intoxication should have been submitted for determination by the trier of the facts.

We have carefully reviewed the record and think that what we have said herein adequately covers all the points. We reverse the action of the trial court in granting the instructed verdict and remand for a new trial.

Reversed and remanded.

DENTON, C. J., not participating.